AREA MENTAL HEALTH, MENTAL RETARDATION AND SUBSTANCE ABUSE AUTHORITY OF VANCE, WARREN, FRANKLIN AND GRANVILLE COUNTIES v. HELENE SPEED

No. 8310SC804

(Filed 3 July 1984)

1. **Administrative Law § 8— review of administrative action—reasons for decision**

   It is unnecessary for a trial judge who reviews administrative action under G.S. 150A-51 to explain the reasons for his decision to affirm such action.

2. **Master and Servant § 7.5— age discrimination—replacement by unprotected person—showing not necessary**

   An employee subject to the State Personnel System was not required to show that she was replaced by a person outside the protected age group in order to establish a prima facie case of age discrimination. G.S. 126-16; G.S. 126-34; G.S. 126-36.

3. **Master and Servant § 7.5— age discrimination—performance as good as retained employee—showing not required**

   Respondent employee was not required to show that her performance was at least as good as that of any retained employee in order to establish a prima facie case of age discrimination.

4. **Master and Servant § 7.5— prima facie case of age discrimination**

   Respondent established a prima facie case of age discrimination in her dismissal by petitioner where she introduced evidence tending to show that she had been employed by petitioner for ten years and that her work had been consistently evaluated by her superiors as satisfactory, since such evidence supports an inference that respondent was qualified for her job and that her discharge resulted from discriminatory motives.

5. **Master and Servant § 7.5— rebuttal of prima facie case of age discrimination**

   Upon an employee's establishment of a prima facie case of age discrimination, the employer then has the burden of articulating some legitimate, nondiscriminatory reason for its actions toward the employee. In this case, the petitioner employer successfully rebutted respondent's prima facie showing of age discrimination by coming forward with evidence of nondiscriminatory reasons for its dismissal of respondent.

6. **Master and Servant § 7.5— age discrimination—erroneous finding by State Personnel Commission**

   The State Personnel Commission erred in ruling that respondent was wrongfully dismissed from her job as a clerk-typist with an Area Mental Health Authority because of age discrimination where (1) the Commission improperly shifted the burden of proof to the Authority to show an absence of discrimination; (2) the Commission made no finding that the Authority's ac-

tions were motivated by intentional discrimination; and (3) a contrary result was dictated by the Commission's own findings that a reduction in force was necessitated by funding cuts and that respondent was discharged because she was judged to have the lowest "relative efficiency" of the employees considered for the reduction in force.

**7. Master and Servant § 7.5; Public Officers § 12— discharge of State employee— absence of discrimination—advisory opinion of State Personnel Commission**

Where the State Personnel Commission's own findings dictated a conclusion that respondent employee was not subjected to discrimination, the Commission's authority with regard to an agency's discharge of respondent under a reduction in force was limited to issuance of an advisory opinion, and the Commission's order directing the agency to reimburse respondent for attorney fees, to award her back pay, and to remove certain critical documents from her personnel file was not binding on the agency. G.S. 126-37.

**8. Public Officers § 12— discharge of State employee—fair and systematic procedure**

A fair and systematic procedure was employed by an Area Mental Health Authority in its decision to discharge respondent clerk-typist when funding cuts and increased costs necessitated a reduction in force.

**9. Public Officers § 12— removal of memoranda from personnel file—sufficiency of finding**

A finding that two memoranda in respondent's personnel file were "inaccurate and misleading" supported an advisory decision by the State Personnel Commission recommending removal of the memoranda from the personnel file. G.S. 126-25.

**10. Public Officers § 12— discharge of State employee—consideration of inaccurate memoranda**

An agency's consideration of two "inaccurate and misleading" memoranda in respondent employee's personnel file was an insufficient basis for a ruling by the State Personnel Commission that the agency failed to follow proper procedures in discharging respondent when funding cuts and increased costs necessitated a reduction in force where the agency decision would have been the same had the documents not been included, and where the record contained considerable information tending to duplicate the data contained in the challenged documents.

APPEAL by petitioner from *Bowen, Judge.* Order entered 17 May 1983 in Superior Court, WAKE County. Heard in the Court of Appeals 3 May 1984.

This is an appeal by petitioner Area Authority from an order of the Superior Court affirming the State Personnel Commission's award to respondent of back pay and attorney's fees because of wrongful separation from employment and ordering removal of

two documents from respondent's personnel file. The record reveals the following:

The petitioner Area Authority is a public agency that provides mental health, mental retardation, and substance abuse services to a four-county area. The Area Authority has offices in all four counties it serves, with the largest office facility located in Henderson, North Carolina. Respondent, Helene Speed, is a former employee of the Area Authority, having served as a clerk-typist from 1971 until she was separated in 1981. Ms. Speed was discharged in August, 1981, with the stated reason for her separation being a reduction-in-force necessitated by funding cuts. In addition to Ms. Speed a psychologist employed by the Area Authority was discharged and another clerk-typist was reduced from full-time to half-time status. Respondent appealed the decision of the Area Authority to the State Personnel Commission, alleging that her discharge was due to age and sex discrimination and further asserting that the Authority's personnel policy relating to reduction-in-force was not followed. Hearing Officer Patsy R. Smith agreed with Ms. Speed's contentions regarding age discrimination and failure to follow personnel policy, but found that respondent had failed to make out a prima facie case of sex discrimination. After making extensive findings of fact and conclusions of law, the Hearing Officer recommended that Ms. Speed be reinstated with full back pay, that she be awarded reasonable attorney's fees, and that her personnel file be purged of two memoranda critical of her job performance. By order dated 21 October 1982 the Personnel Commission adopted the findings and conclusions of the Hearing Officer. The order entered by the Commission was identical to that recommended by the Hearing Officer, except that Ms. Speed was not ordered reinstated. On appeal by petitioner to Wake County Superior Court, the order of the Personnel Commission was in all respects affirmed. Petitioner appealed.

*Perry, Kittrell, Blackburn & Blackburn, by George T. Blackburn, II, for petitioner, appellant.*

*Olive & Olive, by Susan Freya Olive, for respondent, appellee.*

HEDRICK, Judge.

N.C. Gen. Stat. Sec. 126-43 in pertinent part provides:

> The provisions of the Administrative Procedure Act, Chapter 150A, shall apply to the State Personnel System and hearing and appeal matters before the Commission. . . .

N.C. Gen. Stat. Sec. 150A-51 sets out the scope of review and power of the reviewing court on appeals from administrative decisions as follows:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedure; or
>
> (4) Affected by other error of law; or
>
> (5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.
>
> If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modification.

[1] We note at the outset that, although Judge Bowen affirmed the decision of the Personnel Commission, he did so in an order that consumes fourteen pages of the record. As the above-quoted statute indicates, it is unnecessary for a trial judge who reviews administrative action under G.S. 150A-51 to explain the reasons for his decision to affirm such action. The scope of the review to be conducted by this Court is of course also dictated by G.S. 150A-51. Accordingly, we limit our review of the Personnel Commission's decision to the grounds set out in the statute and will

not concern ourselves with the gratuitous findings, conclusions, and recitals of Judge Bowen.

In the instant case respondent's separation was held wrongful by the State Personnel Commission on two distinct grounds: age discrimination and failure to follow personnel policy in regard to reduction-in-force. In reviewing the Commission's decision, for the errors set out in G.S. 150A-51, we will consider these grounds separately, and so now turn our attention to the Commission's findings and conclusions relating to age discrimination.

Our research has disclosed no case in this jurisdiction dealing with discrimination because of age. Our Legislature has, however, clearly expressed its intention that employees subject to the State Personnel System be protected from unfavorable employment decisions based on discriminatory motives:

> All State departments and agencies and all local political subdivisions of North Carolina shall give equal opportunity for employment, without regard to race, religion, color, creed, national origin, sex, age, or physical disability to all persons otherwise qualified, except where specific age, sex or physical requirements constitute bona fide occupational qualifications necessary to proper and efficient administration. This section with respect to equal opportunity as to age shall be limited to individuals who are at least 40 years of age but less than 70 years of age.

N.C. Gen. Stat. Sec. 126-16.

> Any permanent State employee having a grievance arising out of or due to his employment and who does not allege discrimination because of his age, sex, race, color, national origin, religion, creed, physical disability, or political affiliation shall first discuss his problem or grievance with his supervisor and follow the grievance procedure established by his department or agency.

N.C. Gen. Stat. Sec. 126-34.

> Any State employee or former State employee who has reason to believe that employment, promotion, training, or transfer was denied him or that demotion, layoff or termina-

tion of employment was forced upon him in retaliation for op-position to alleged discrimination or because of his age, sex, race, color, national origin, religion, creed, political affiliation, or physical disability except where specific age, sex or physi-cal requirements constitute a bona fide occupational qualifica-tion necessary to proper and efficient administration, shall have the right to appeal directly to the State Personnel Com-mission.

N.C. Gen. Stat. Sec. 126-36.

Petitioner's first two contentions assign error to the Commis-sion's conclusion that respondent established a prima facie case of age discrimination. Petitioner argues that this conclusion is un-supported by the evidence for two reasons: first, respondent made no showing that she was replaced by a person outside the protected age group, and second, respondent made no showing that "her performance was at least as good as that of any re-tained employee."

Our appellate courts have not heretofore been presented with an opportunity to discuss the elements of a prima facie case of age discrimination. We find much guidance, however, in our Supreme Court's discussion of racial discrimination in *Dept. of Correction v. Gibson*:

> [A] prima facie case of discrimination . . . may be established in various ways. For example, a prima facie case of dis-crimination may be made out by showing that (1) a claimant is a member of a minority group, (2) he was qualified for the position, (3) he was discharged, and (4) the employer replaced him with a person who was not a member of a minority group. (Citations omitted.)

> A prima facie case of discrimination may also be made out by showing the discharge of a black employee and the retention of a white employee under apparently similar circumstances. (Citations omitted.)

308 N.C. 131, 137, 301 S.E. 2d 78, 82-83 (1983).

[2]  Considered in light of the above-quoted language, we find no merit in petitioner's contention that Ms. Speed was required to show that she was replaced by a person outside the protected age

group in order to establish a prima facie case of discrimination. Indeed, such a requirement would have the anomalous effect of rendering reduction-in-force decisions immune from claims of illegal discrimination and consequent judicial scrutiny. Our laws protect public employees from illegal discrimination in all employment practices, and we reject a rule which would make that protection unavailable to employees discharged because of a reduction-in-force.

[3, 4] Nor do we agree with petitioner that respondent is required to show that her performance "was at least as good as that of any retained employee." While it is true that one element of a prima facie case is a showing that the plaintiff is qualified for the position in question, petitioner misconstrues respondent's burden in this regard. "The plaintiff need not show perfect performance or even average performance to satisfy this element. He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him." *Flowers v. Crouch-Walker Corp.*, 552 F. 2d 1277, 1283 (7th Cir. 1977). In the instant case, respondent introduced evidence tending to show that she had been employed by petitioner for ten years, and that her work had been consistently evaluated by her employers as satisfactory. This evidence provides more than adequate support for an inference that Ms. Speed was qualified for her job, and that her discharge resulted from discriminatory motives. In sum, we hold that the Commission's conclusion that respondent established a prima facie case of age discrimination is supported by substantial evidence and is free of other error of law.

Petitioner next contends that the Commission acted improperly in finding that the Area Authority had failed to produce evidence sufficient to rebut claimant's prima facie case. The employer's burden upon establishment of a prima facie case of discrimination has been the subject of much discussion by the courts of this country. Once again we turn to the words of our Supreme Court in *Gibson* for guidance in deciding the instant case:

> Once a prima facie case of discrimination is established, the employer has the burden of *producing* evidence to rebut

the presumption of discrimination raised by the prima facie case. (Citations omitted.) . . . [T]he employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons. The employer is not required to prove that its action was actually motivated by the proffered reasons for it is sufficient if the evidence raises a genuine issue of fact as to whether the claimant is a victim of intentional discrimination.

308 N.C. 131, 138, 301 S.E. 2d at 83 (emphasis original).

The record contains the following conclusion made by the Commission: "[Area Authority] has not shown that it had legitimate non-discriminatory reasons for reducing [Ms. Speed's] position. . . . Therefore, [Ms. Speed] must also prevail on the issue of age discrimination."

[5] We think it clear from our examination of the Commission's order that the Commission acted under a misapprehension of the law in reaching the above-quoted conclusion. As *Gibson* plainly states, the Area Authority's burden upon respondent's establishment of a prima facie case was merely one of articulating some legitimate, nondiscriminatory reason for its actions in regard to Ms. Speed. The record contains abundant evidence in support of the reasons given by the Area Authority for its decision to discharge respondent. Petitioner, having satisfied its burden of production, was not required to assume as well the burden of proof.

Petitioner next assigns error to the Commission's conclusion that the Area Authority "did discriminate against [Ms. Speed] on the basis of age in its decision to RIF [reduce in force] her position." Petitioner contends that this conclusion is arbitrary and capricious, was affected by error of law, and is "not supported by substantial, competent and material evidence in view of the record as a whole."

Resolution of the issues raised by petitioner requires that we once again turn to the language of the Supreme Court in *Gibson*:

When the employer explains the nondiscriminatory reasons for his action, the plaintiff is then given the opportunity to show that the employer's stated reasons are in fact a pretext for intentional discrimination. We note parenthetically that the plaintiff may rely on evidence offered to

establish his prima facie case to carry his burden of proving pretext.

*Id.* at 139, 301 S.E. 2d at 84. Of particular interest in the context of the present case are the following statements made by the *Gibson* Court:

> The trier of fact is not at liberty to review the soundness or reasonableness of an employer's business judgment when it considers whether alleged disparate treatment is a pretext for discrimination.

> In *Loeb v. Textron*, 600 F. 2d 1003 (1st Cir. 1979), the Court stated:

> "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason must be reasonably articulated and non-discriminatory, but does not have to be a reason that the judge or jurors would act upon or approve. . . . An employer is entitled to make his own policy and business judgment. . . .

> . . .

> The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reason, the easier it will be to expose it as a pretext, if indeed it is one. The jury must understand that its focus is to be on the employer's motivation, however, and not on its business judgment. . . ."

*Id.* at 140, 301 S.E. 2d at 84 (citations omitted).

In the instant case, we have held that the Area Authority successfully rebutted respondent's prima facie case by coming forward with evidence of legitimate nondiscriminatory reasons for its actions in regard to Ms. Speed. Upon such rebuttal, respondent was obliged to prove by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 67 L.Ed. 2d 207, 215 (1981).

[6]  Although the Commission concluded that the Area Authority discriminated against Ms. Speed because of her age, this conclusion is without support in the findings of fact. The order of the Commission contains no finding that the reasons given by the Area Authority for its decision to discharge Ms. Speed were pretextual. Nor did the Commission find or conclude that petitioner *intentionally* discriminated against Ms. Speed in making its decision. Termed "the ultimate question" by our Supreme Court, *Gibson*, 308 N.C. at 147, 301 S.E. 2d at 88, this critical issue is nowhere addressed in the order entered by the Commission. Indeed, the Commission's order contains findings that would support a contrary conclusion:

5. Due to economic conditions, Respondent [Petitioner herein] lost approximately $160,000.00 in monies in fiscal year 1980/1981. In addition, Respondent's operating costs increased due to inflation. To maintain the level of services after these financial losses, Mr. J. Thomas McBride, the Area Mental Health Director, cut back on expenses, consolidated programs, authorized only necessary purchases, and froze all vacant positions. However, these cuts were not sufficient to effect the needed budget reduction, so positions had to be eliminated.

6. In order to determine which positions would be RIFed, Mr. McBride conducted a retreat in February or March, 1981, with members of his management team, consisting of 10 to 12 persons, e.g., the medical director, supervisors of clerical staff, et cetera. Mr. McBride decided to reduce non-direct service positions as far as possible. It was determined that the positions cut would be one clerk typist III, one clerk typist IV, and one psychologist position.

7. Mr. McBride made his recommendation that the above positions be reduced at the Board of Mental Health meeting on July 27, 1981. The Board approved this recommendation. According to Mr. McBride, there had not yet been a decision as to which office or which persons would be affected by the RIF. Sometime before July 29, 1981, Mr. McBride decided that the positions would come from the Henderson Clinic. Mr. McBride made the ultimate decision as to who would be reduced in force, consonant with the recommendations which

evolved out of his discussions of personnel with members of the management team. None of these recommendations were made in writing.

8. The factors considered in determining which individuals would be RIFed were seniority, type of appointment, and relative efficiency. It was the consensus of the management team that seniority would have some weight, but that more weight would be assigned to relative efficiency, in light of reduced work force that would result from the RIF.

. . .

11. *In the RIF selection design used by Mr. McBride, relative efficiency was deemed to be the most important and in essence, the determinative factor. The decision on whether to retain an employee was based on that employee's job performance, the impact of the employee's position on programs, and in particular, whose reduction would have the least negative impact on clinic operations and programs.* Petitioner [Respondent herein], a Clerk Typist IV over 40 years of age, and one male psychologist were RIFed. *Petitioner's relative efficiency was judged through discussions with the management team, to be the lowest.* [Emphasis added.]

. . .

In essence, the decision to RIF [Ms. Speed] was based on the subjective determinations and recommendations of undocumented performance inefficiencies and attitudinal problems on [Ms. Speed's] part, by the members of the management team.

Thus, the Commission's own findings indicate that Ms. Speed was discharged not because of her age, but because she was judged to have the lowest "relative efficiency" of the employees considered for reduction-in-force. While the Commission may disagree with the Area Authority's judgment in this regard, *Gibson* clearly states that such disagreement will not support a finding of intentional discrimination:

[I]t is not important that the trier of fact believes the employer's judgment or course of action to be erroneous or

even unreasonable as the *only* relevant question, and the *sole* focus of the inquiry, is the employer's motivation.

*Gibson* at 141, 301 S.E. 2d at 85 (emphasis original).

Because the Commission improperly shifted the burden of proof to petitioner to show an absence of discrimination, and because the Commission made no finding that petitioner's actions were motivated by intentional discrimination, and because the Commission's own findings dictate a contrary conclusion, we hold that that portion of the Commission's decision relating to age discrimination must be reversed.

[7] We now turn our attention to the second basis relied upon by the Personnel Commission for its decision in respondent's favor, *to wit*, that the Area Authority failed to comply with applicable reduction-in-force policy. Before reaching the substantive aspects of this issue, we must first consider the source and extent of the Personnel Commission's authority.

N.C. Gen. Stat. Sec. 126-5(a) provides that Chapter 126, entitled "State Personnel System," "shall apply . . . to employees of local social services departments, public health departments, *mental health clinics*, and local civil defense agencies which receive federal grant-in-aid funds." (Emphasis added.) N.C. Gen. Stat. Sec. 126-37 (Cum. Supp. 1983) in pertinent part provides:

> The decisions of the State Personnel Commission shall be binding in appeals of local employees subject to this Chapter if the Commission finds that the employee has been subjected to discrimination prohibited by Article 6 of this Chapter. . . . However, in all other local employee appeals, the decisions of the State Personnel Commission shall be advisory to the local appointing authority. An action brought in superior court by an employee who is dissatisfied with an advisory decision of the State Personnel Commission or with the action taken by the local appointing authority pursuant to the decision shall be heard upon the record and not as a trial de novo.

We have held that the Personnel Commission's own findings dictate a conclusion that Ms. Speed was not "subjected to discrimination." It follows that the Commission's authority in regard to petitioner's reduction-in-force action is limited to issuance of an advisory decision. The Commission's order directing petitioner to

reimburse respondent for attorney's fees, to award her full back pay, and to remove certain critical documents from her file is thus in no way binding on the Area Authority. Furthermore, for the reasons discussed below, we believe the Commission's order is based upon a misapprehension of the law relating to reductions-in-force.

We first take judicial notice, pursuant to N.C. Gen. Stat. Sec. 150A-64, of the following provisions of the North Carolina Administrative Code relating to separation of employees subject to the State Personnel System:

> (a) Policy. An appointing authority may separate an employee whenever it is necessary due to shortage of funds or work, abolishment of a position or other material change in duties or organization. Retention of employees in classes affected shall be based on systematic consideration of type of appointment, length of service and relative efficiency; the relative weight of each of the factors stated in this Paragraph is to be determined by management in making reduction in force decisions. However, neither temporary, probationary nor trainee employees shall be retained in cases where permanent employees (those who have satisfactorily completed a probationary or equivalent trial period) must be separated in the same or related class. Employees should be given notice as soon as possible of any reduction in force.

> . . .

> (e) Appeals. A permanent employee with 5 years continuous service or status under competitive service who is separated due to reduction in force shall have the right to appeal to the State Personnel Commission for a review to assure that systematic procedures were applied. Provisions of the appeal procedure will be followed.

25 N.C.A.C. 1D.0504. Also relevant to our inquiry are the Code provisions relating specifically to local employees:

SEPARATION

> . . .

> (b) Employees who have acquired permanent status will not be subject to involuntary separation or suspension ex-

cept for cause, or reasons of reduction in force, or mandatory retirement age. . . .

    . . .

    (2) Dismissal. Dismissal is involuntary separation for cause and shall be made in accordance with the provisions of the Policy on Suspension and Dismissal.

    (3) Reduction in Force. For reasons of curtailment of work or lack of funds, the appointing authority may separate employees. Retention of employees in classes affected shall be based on systematic consideration of type of appointment, length of service and relative efficiency. . . .

    . . .

    (d) A permanent employee who is separated due to reduction in force shall have the right to appeal to the State Personnel Commission for a review to assure that systematic procedures were applied equally and fairly. The appeal shall be submitted in writing to the State Personnel Director not later than 30 days after the effective date of separation. The State Personnel Commission shall determine if the appeal is valid and make its recommendation to the agency. The employee shall be notified in writing and a copy of the notice placed in the permanent record of the employee.

25 N.C.A.C. 1I.0904. The personnel policy pursuant to which the Area Authority acted is a part of the record on appeal and contains provisions that are essentially a restatement of the regulations above.

    From the above-quoted regulations, we distill the following applicable principles: Petitioner has authority to separate employees in the event funding cuts make it necessary to abolish positions. In deciding what employees to retain when a reduction-in-force is necessary, the appointing authority is to systematically consider three factors: (1) type of appointment; (2) length of service; (3) relative efficiency. The weight to be accorded each factor is to be determined by management. Employees separated due to reductions-in-force may appeal to the State Personnel Commission, which shall review the decision of the appointing authority "to assure that systematic procedures were applied equally and

fairly." After completing its review, the Commission shall make a recommendation to the local agency.

Applying these principles to the instant case, we first point out that the necessity to abolish some positions because of funding cuts and increased costs has never been disputed. The Commission's findings of fact indicate that petitioner utilized the following procedure in deciding to separate Ms. Speed: Area Director Thomas McBride first met with members of the "management team" to determine what positions should be abolished. It was decided at this point that, as far as possible, "non-direct service positions" should be reduced, and the position of Clerk-Typist III was one of the three identified for reduction. The Board of Mental Health approved the recommendation of the Area Director in this regard and Mr. McBride then set about determining which of the fifteen Clerk-Typist III positions should be abolished. He first ascertained that all of the individuals in question were permanent employees, thus rendering the "type of appointment" factor of no significance. As part of the selection process Mr. McBride reviewed the personnel files of the various Clerk-Typist III employees. He did not at this time perform a quantitative analysis of the performance evaluations contained in these files because of his belief that any such analysis would be invalid due to the variabilities among the supervisors who conducted the evaluations. In addition to reviewing personnel files, Mr. McBride also consulted the members of the Area Management Team for specific recommendations, including persons who supervised Ms. Speed. The relative weight to be accorded seniority and relative efficiency was discussed by the Area Management Team, which resolved to give primary consideration to relative efficiency "in light of reduced work force that would result from the RIF." The ultimate decision to eliminate the position held by Ms. Speed was "consonant with the recommendations which evolved out of . . . discussions of personnel with members of the management team."

[8] We think the procedure outlined in the Commission's findings of fact a fair and systematic one. Whether the Commission itself might choose to utilize a different procedure is irrelevant. We find nothing in the findings of fact to indicate that Ms. Speed was unfairly singled out for separation, or that she was a victim of hasty or careless decision-making. Our review of the record

reveals that Mr. McBride systematically sought out and considered all the available data in arriving at his decision. Contrary to the Commission's suggestion in its findings of fact, there is no requirement that the recommendations of the Area Management Team be written rather than oral. Nor is there a requirement that the Area Director conduct a quantitative analysis of performance evaluations; indeed, we find persuasive Mr. McBride's contention that the results of such analysis would be of dubious value. Nor is management obliged to give equal weight to length of service, as is suggested by the Commission's order. The provisions of the Administrative Code, set out above, state that management has discretion in determining the weight to be accorded the factors it considers. In sum, then, we hold that the Commission's own findings dictate a conclusion that systematic procedures were fairly and equally applied with regard to the separation of Ms. Speed.

[9, 10]   Our decision in this regard is rendered no less certain by Mr. McBride's consideration of two critical memoranda contained in Ms. Speed's personnel file. We are aware that the Commission found these documents to be "inaccurate and misleading," and that petitioner has not excepted to this finding. Such a finding, unchallenged on appeal, supports an *advisory* decision by the Commission recommending removal of the documents from Ms. Speed's personnel file. N.C. Gen. Stat. Sec. 126-25. The fact that some of the data considered by the Area Authority may have been without factual basis, however, does not necessarily render its ultimate decision erroneous. Indeed, we think it inevitable in decisions of this sort, where information is gathered in a number of ways and from a number of sources, that some data of questionable validity will be considered. In the instant case Mr. McBride testified that, while his decision was "influenced" by the challenged documents, the amount of such influence was "not a lot." He added that he "took into consideration much additional information," and that his decision would have been the same had the documents not been included. Furthermore, we note that the record contains considerable information, provided to and considered by Mr. McBride, that tends to duplicate the data contained in the challenged documents. We thus believe the Area Authority's consideration of the memoranda insufficient basis for the Commission's ruling that petitioner failed to follow proper

procedure in regard to the reduction of Ms. Speed's position. Because our examination of the record as a whole reveals no other support for such a conclusion, the ruling of the Personnel Commission in this regard must be reversed.

The decision of the Superior Court is reversed and the cause is remanded to that court for entry of an order to the following effect: the decision of the Personnel Commission relating to removal of two memoranda from respondent's personnel file is modified so as to be advisory rather than binding in nature. The remainder of the decision of the Personnel Commission is reversed in accordance with this opinion and the proceeding is remanded to the Personnel Commission for entry of an order affirming the decision of the Area Authority.

Reversed and remanded.

Judges ARNOLD and PHILLIPS concur.