MICHAEL H. VANDERBURG, Petitioner v. N.C. DEPARTMENT OF REVENUE, Respondent

No. COA04-554

(Filed 1 March 2005)

**1. Public Officers and Employees— probationary non-career employee—jurisdiction of Personnel Commission**

N.C. G.S. § 126-36(a) allows the State Personnel Commission to review the religious discrimination claims of a probationary non-career employee.

**2. Administrative Law— incorrect standard of review by trial court—record sufficient for review**

In cases appealed from an administrative tribunal, a trial court's use of an incorrect standard of review does not automatically require remand. Here, the whole record and the transcripts were sufficient to consider the issue without remanding the case even though the trial court did not specify the standard it applied, detail its findings of fact, or delineate its conclusions of law.

**3. Public Officers and Employees— Personnel Commission final decision—religious discrimination—whole record review—evidence sufficient**

The trial court's order affirming a State Personnel Commission's final decision was affirmed where plaintiff offered and the Commission found substantial evidence to show that N.C. Department of Revenue's proffered reasons for dismissal of plaintiff probationary employee were a pretext for religious discrimination. A whole record review does not permit the appellate court to substitute its judgment for the Commission's findings of fact.

Judge WYNN concurring.

Appeal by respondent from order entered 22 December 2003 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 11 January 2005.

*Ferguson, Stein Chambers, Adkins, Gresham & Sumter, P.A., by John W. Gresham, for petitioner-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General George W. Boylan and Assistant Attorney General Michael D. Youth, for respondent-appellant.*

**VANDERBURG v. N.C. DEP'T OF REVENUE**

[168 N.C. App. 598 (2005)]

TYSON, Judge.

The North Carolina Department of Revenue ("NCDOR") appeals an order affirming the Final Agency Decision of the State Personnel Commission ("the Commission"). The Commission adopted the recommended decision of the Administrative Law Judge ("ALJ") that overturned the dismissal of Michael H. Vanderburg ("Vanderburg") and reinstated him to his former position. We affirm.

## I. Background

Vanderburg was employed with the NCDOR in January 1999 as a Revenue Officer Trainee under a two-year probationary period. Vanderburg was initially assigned to the Charlotte Revenue Office under the supervision of Martha Calhoun ("Calhoun"). On 27 May 1999, Calhoun met with Vanderburg and reviewed his performance from January through April 1999. He received "good" and "very good" ratings in all categories. Calhoun noted that Vanderburg was "thorough in his follow-up and investigation of taxpayers and very good in following departmental policies." Calhoun concluded by stating Vanderburg "handles himself in a professional manner and is respectful of his co-workers and the public."

Shortly after this review, Vanderburg accepted a position with a church as an associate pastor. He subsequently completed and submitted a NCDOR form entitled "Request for Secondary Employment." The request was approved by the NCDOR's Assistant Secretary, Dewey Sanders ("Sanders"), on 29 June 1999. Vanderburg continued to maintain his workload after starting his pastorship.

On 1 July 1999, Vanderburg was reassigned to work under the supervision of Dean Barnes ("Barnes"). On 22 July 1999, Vanderburg met with Barnes and Chris Pappas ("Pappas"), Office Manager for the Collections Division in Charlotte. Barnes and Pappas told Vanderburg that they had received two anonymous complaints that religious materials displayed in his work cubicle were offensive. Vanderburg was ordered to remove all religious items from his walls and the screen saver from his computer. Barnes also stated that he was concerned with Vanderburg's associate pastor position. Although Vanderburg was ordered to remove personal religious items from his cubicle, other employees continued to display materials in their cubicles with religious themes.

On 23 July 1999, Pappas approached Vanderburg's father, an auditor with the NCDOR. Pappas confirmed that he directed Vanderburg

to remove all personal materials from his cubicle. Vanderburg's father advised Pappas that Vanderburg had drafted a letter to be forwarded to Sanders. Pappas became agitated. He referred to Vanderburg's cubicle as a "shrine" and indicated that since Vanderburg was still in training, he could "just fire him right now." Pappas conceded that Vanderburg did "real good work" and worked "very hard."

Pappas met with Vanderburg to discuss their earlier meeting. Vanderburg gave Pappas his letter to Sanders, which Pappas set aside. He told Vanderburg that there may have been a misunderstanding about the directive to remove all personal items from his cubicle. Pappas explained he only meant for a newspaper article and lighthouse to be removed. Vanderburg immediately removed the items. Pappas then advised Vanderburg that there was no need to send his letter to Sanders, as there would be no repercussions or retaliation. Vanderburg agreed, but asked Pappas to place the letter to Sanders in his personnel file.

Vanderburg's caseload increased substantially in August 1999 after the meetings with Barnes and Pappas. The NCDOR acknowledged that it would periodically equalize caseloads among its employees. However, no such equalization was made that August. Despite the expanded caseload, Vanderburg was able to significantly reduce pending cases by the end of September 1999.

On 18 November 1999, Barnes performed an interim performance review of Vanderburg. The review asserted that Vanderburg had priority cases in his caseload "which need work or follow-up." The interim review did not reference the unusual increase in Vanderburg's caseload in August 1999, the non-equalization of Vanderburg's cases, or his positive efforts in reducing his caseload that Fall.

On 19 November 1999, Vanderburg met with Pappas and Ralph Foster ("Foster"), Pappas's superior and Director of the Western Collection Division. In the meeting, Foster commented that he had "specific concerns" about Vanderburg's future with the NCDOR. An argument ensued and Foster called Vanderburg a "smart ass" and a "smart butt." Vanderburg requested transfer to the Gastonia branch.

Vanderburg's last day of work in the Charlotte office was 24 November 1999. That day, Pappas informed Vanderburg that he would not receive an annual raise. Vanderburg sent a letter to Sanders in late November 1999 detailing the events that had occurred from July 1999 forward, including Foster's behavior on 19 November 1999.

Foster met with Vanderburg again in December 1999 after he was transferred to Gastonia. Foster stated that Vanderburg could be "fired at anytime." He also showed Vanderburg a copy of his November letter to Sanders and stated, "what do you think you were doing; you really messed up now; do you think Dewey Sanders would listen to you." Foster ended the meeting by telling Vanderburg that he was waiting for the opportunity to dismiss him.

In Gastonia, Vanderburg was initially assigned personal income tax cases. On 1 June 2000, Vanderburg received an annual review. His supervisors, Libby McAteer ("McAteer") and J.B. Williams ("Williams") stated they were pleased and that Vanderburg was doing a great job. The written review ended with the comment, "keep up the good work."

Vanderburg was assigned to the business tax division in June 2000. His immediate supervisors described him as very helpful, frequently checking with his supervisor, and working very hard to reduce the territory's caseload.

In September 2000, the NCDOR reorganized the Collections Division. Robie McLamb ("McLamb") became the Director of Collections for the State. On 23 October 2000, McLamb met with McAteer and Williams to discuss Vanderburg's employment. He explained that Vanderburg was behind on his caseload and appeared to not be performing his duties. McAteer and Williams explained to McLamb that Vanderburg's large caseload was due to him inheriting the largest territory in Gastonia with a four-month backlog. Despite McAteer and Williams speaking favorably of Vanderburg, McLamb told them Vanderburg would be dismissed.

On 24 October 2000, McLamb met with Vanderburg and expressed several concerns. McLamb first pointed to the large number of pending cases in Vanderburg's territory as an issue. McLamb also stated that he had heard that Vanderburg had trouble getting along with people in authority. McLamb further mentioned that Pappas had a problem with Vanderburg.

On 9 November 2000, Vanderburg filed a *pro se* petition with the Office of Administrative Hearings ("OAH") alleging that he was threatened with dismissal for poor performance despite his history of positive performance reviews.

Vanderburg met with McLamb on 9 November 2000. Vanderburg explained that he filed a petition with the OAH. McLamb informed

Vanderburg that he would not be retained beyond the probationary period. Vanderburg was provided two weeks severance.

Vanderburg filed a second petition on 6 December 2000 alleging violations of rights protected by N.C. Gen. Stat. § 126-36. On 18 December 2000, the OAH consolidated the petitions. Vanderburg and the NCDOR filed prehearing statements. The NCDOR's prehearing statement acknowledged that the governing statute in the case was N.C. Gen. Stat. § 126-36 and that the issue to be resolved was whether Vanderburg's termination during his probationary period arose from either discrimination based on his religious practices and/or retaliation for his opposition to alleged discrimination.

On 31 December 2001, the ALJ found that: (1) Vanderburg proffered substantial evidence to show he was dismissed in violation of his protected rights; (2) the NCDOR's proffered reason for dismissing Vanderburg was "not worthy of belief;" and (3) Vanderburg's termination was retaliatory due to his "protest against what he believed to be encroachment by [the NCDOR] on his protected rights of religious expression." The ALJ recommended Vanderburg be reinstated as a permanent employee within the NCDOR with full benefits.

Following a whole record review, the Commission adopted the ALJ's recommendation. Under N.C. Gen. Stat. § 150B-45, the NCDOR appealed to Wake County Superior Court. Both parties submitted proposed recommended decisions to the trial court for review. The trial court's order stated it "reviewed the petition, the record filed by [Vanderburg], and the submissions by counsel for both [parties] . . . heard extensive argument of counsel," and affirmed the Commission's decision. The NCDOR appeals.

## II. Issues

The issues are whether: (1) the Commission has jurisdiction over an appeal from a case filed by a probationary employee of the NCDOR; and (2) the trial court properly reviewed and affirmed the Commission's order.

## III. Subject Matter Jurisdiction

[1] The NCDOR contends Vanderburg, as a probationary non-career employee, may not avail himself to the protections of the statutes and procedures before the Commission concerning alleged discriminatory practices. We disagree.

VANDERBURG v. N.C. DEP'T OF REVENUE

[168 N.C. App. 598 (2005)]

## A. N.C. Gen. Stat. § 126-1 *et seq.*

N.C. Gen. Stat. § 126-1 *et seq.* govern the State Personnel System. It includes the appeals process for claims involving unlawful employment practices by State agencies. Not all State government employees qualify for the entire appeals process. N.C. Gen. Stat. § 126-5 categorizes certain employees as "exempt" from the protections and procedures in Chapter 26. Specifically to this issue, N.C. Gen. Stat. § 126-5(c)(1) (2003) states, "except as to the provisions of Articles 6 and 7 of this Chapter, the provisions of this Chapter shall not apply to . . . [a] State employee who is not a career State employee as defined by this Chapter." This rule is also reiterated in N.C. Gen. Stat. § 126-34 (2003), which limits the application of Chapter 126 to "career" State employees:

> *Unless otherwise provided in this Chapter,* any career State employee having a grievance arising out of or due to the employee's employment . . . who alleges unlawful harassment because of the employee's age, sex, race, color, national origin, religion, creed, or handicapping condition as defined by G.S. 168A-3 shall submit a written complaint to the employee's department or agency.

(Emphasis supplied).

In conjunction with the above statutes, the NCDOR argues Chapter 126 applies only to "career" State employees and cites exclusively to *Woodburn v. N.C. State Univ.*, 156 N.C. App. 549, 577 S.E.2d 154, *cert. denied*, 357 N.C. 470, 584 S.E.2d 296 (2003), as authority. In *Woodburn*, the petitioner was a member of the Instructional and Research Staff for North Carolina State University, who was dismissed after an extended leave due to a pregnancy. 156 N.C. App. at 550-53, 577 S.E.2d at 155-57. The petitioner filed a contested case with the Commission alleging gender discrimination under N.C. Gen. Stat. § 126-16 (2001) and § 126-34.1 (2001). *Id.* at 550, 577 S.E.2d at 155.

In resolving the issue of whether the Commission had jurisdiction, this Court followed our decision in *Hillis v. Winston-Salem State Univ.*, 144 N.C. App. 441, 549 S.E.2d 556 (2001). *Id.* at 555, 577 S.E.2d at 158. We noted the distinction in the statutes discussed above between certain classes of State employees in determining who was allowed or eligible to seek redress from employment discrimination through the Commission. *Id.* at 554-55, 577 S.E.2d at 158. This Court determined the appeals process of Chapter 126 did not apply to the

petitioner, as N.C. Gen. Stat. § 126-5(c1)(8) specifically exempts "Instructional and research staff, physicians, and dentists of The University of North Carolina" from "the provisions of [Chapter 126]," except "the provisions of Articles 6 and 7." *See id.* at 555, 577 S.E.2d at 158. The *Woodburn* Court further recognized that the university system provided the petitioner with other internal review procedures in lieu of Chapter 126. *Id.*

### B.  N.C. Gen. Stat. § 126-36(a)

Where discriminatory actions prohibited by the North Carolina and United States Constitutions are alleged, Chapter 126 does not exclude non-career employees. N.C. Gen. Stat. § 126-36(a) (2003) provides:

> *Any State employee or former State employee* who has reason to believe that employment, promotion, training, or transfer was denied the employee or that demotion, layoff, transfer, or termination of employment was forced upon the employee in retaliation for opposition to alleged discrimination or because of the employee's age, sex, race, color, national origin, religion, creed, political affiliation, or handicapping condition as defined by G.S. 168A-3 except where specific age, sex or physical requirements constitute a bona fide occupational qualification necessary to proper and efficient administration, shall have the right to appeal directly to the State Personnel Commission.

(Emphasis supplied).

N.C. Gen. Stat. § 126-39 (2003) supports this premise by stating, "*[e]xcept* for positions subject to competitive service and except for appeals brought under G.S. 126-16, 126-25, and *126-36*, this Article applies to all State employees who are career State employees at the time of the act, grievance, or employment practice complained of." (Emphasis supplied).

Our Supreme Court recognized that N.C. Gen. Stat. § 126-36 permitted "*[a]ny* State employee or former State employee" an appeal alleging discrimination to the Commission in *Dep't of Correction v. Gibson*, 308 N.C. 131, 135-36, 301 S.E.2d 78, 82 (1983). There, the petitioner had been with respondent for less than two years and was not a "career" State employee as defined by N.C. Gen. Stat. § 126-1.1. *Id.* However, the Court did not question the Commission's jurisdiction over the case and set forth the legislative intent behind the statute, stating:

[N.C. Gen. Stat. § 126-36] relates only to State employees and is consistent with the legislative policy announced in G.S. 143-422.2 as follows:

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

*Gibson*, 308 N.C. at 136, 301 S.E.2d at 82.

In *Clay v. Employment Security Comm.*, our Supreme Court recognized that an applicant for employment with the State government has a "right to appeal to the Personnel Commission . . . under N.C.G.S. § 126-36.1" on a discrimination claim. 340 N.C. 83, 85, 457 S.E.2d 725, 727 (1995). As in *Gibson*, the *Clay* Court recognized a right to appeal to the Commission despite acknowledging the petitioners were not "career State employees" for purposes of Chapter 126. *Id.* at 86, 457 S.E.2d at 727; *Gibson*, 308 N.C. at 131, 301 S.E.2d at 78 (neither of the two petitioners had worked for the State for two years).

### C. Analysis

Here, Vanderburg was a probationary employee with the NCDOR during the time at issue and was serving the last months of his probationary period when he was dismissed. Substantial evidence exists to show his termination from the NCDOR resulted from conflict over his religious practices. Vanderburg's complaint alleged, "harassment, retaliation, and discrimination against me due to my religion." He argues the Commission has jurisdiction over the matter under N.C. Gen. Stat. § 126-36(a). We agree.

While N.C. Gen. Stat. § 126-5(c)(1) provides that Chapter 126 does not apply to non-career State employees, we find the language of N.C. Gen. Stat. § 126-36(a) to be directly on point to Vanderburg's claim. *See Merritt v. Edwards Ridge*, 323 N.C. 330, 337, 372 S.E.2d 559, 563 (1988) (where one statute deals with a particular issue in specific

detail and another speaks to the same issue in broad, general terms, the particular, specific statute will be construed as controlling, absent a clear legislative intent to the contrary); *Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985) ("Where one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability.").

N.C. Gen. Stat. § 126-36 specifically allows "*[a]ny* State employee or former State employee" to appeal claims alleging discrimination to the Commission. A statute that is clear and unambiguous must be construed using its plain meaning. *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). The pertinent language of N.C. Gen. Stat. §§ 126-36 and 126-39 remained unchanged during repeated legislative amendments to N.C. Gen. Stat. § 126 *et seq.*, which the NCDOR cites. *See* 1998 N.C. Sess. Laws ch. 135, § 4 (N.C. Gen. Stat. § 126-36); *see also* 1991 N.C. Sess. Laws ch. 354, § 7 (N.C. Gen. Stat. § 126-39) (no legislative intent to the contrary shown in the most recent amendments). Further, our Supreme Court in *Gibson* has held that the public policy of our State allows non-career and former State employees the right to a hearing with the Commission concerning allegations of discrimination. 308 N.C. at 136, 301 S.E.2d at 82. Our Supreme Court's decision in *Clay* strengthens this determination. 340 N.C. at 83, 457 S.E.2d at 725.

*Woodburn* is not controlling to the facts at bar due to N.C. Gen. Stat. §§ 126-36 and 126-39, our Supreme Court's interpretation of N.C. Gen. Stat. § 126-36 in *Gibson* and *Clay*, and the lack of legislative intent indicating a contrary interpretation. In *Woodburn*, this Court did not address N.C. Gen. Stat. §§ 126-36 or 126-39 in its opinion determining the Commission's jurisdiction. 156 N.C. App. at 549, 577 S.E.2d at 154. Any language in *Woodburn* limiting N.C. Gen. Stat. § 126-36 to "career" State employees is *obiter dicta.*

We hold Vanderburg's employment is not exempted by N.C. Gen. Stat. § 126-5 from the appeals process through the Commission in Chapter 126. Although Vanderburg is not a "career" State employee, N.C. Gen. Stat. § 126-36(a) allows the Commission to review his claims derived from alleged discrimination on the basis of religion.

Vanderburg's petition for hearing was properly before the Commission under N.C. Gen. Stat. § 126-36(a). The NCDOR's argument is overruled.

VANDERBURG v. N.C. DEP'T OF REVENUE

[168 N.C. App. 598 (2005)]

## IV. The Trial Court's Review of the Commission's Order

**[2]** The NCDOR contends the trial court erred by: (1) not articulating a standard of review; (2) applying an incorrect standard of review; and (3) affirming the Commission's order because substantial evidence supported the findings of fact and the conclusions of law were not erroneous. We disagree.

### A. Sufficiency of the Trial Court's Order

In cases appealed from an administrative tribunal, a trial court's use of an incorrect standard of review does not automatically require remand. *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 665, 599 S.E.2d 888, 898 (2004). If the record enables the appellate court to decide whether grounds exist to justify reversal or modification of that decision under N.C. Gen. Stat. § 150B-51(b), the reviewing court may make that determination. *Shackleford-Moten v. Lenoir Cty. DSS*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002), *cert. denied*, 357 N.C. 252, 582 S.E.2d 609 (2003).

Here, the trial court's order stated:

Based upon its review the Court determines that the Findings of Fact by the State Personnel Commission are supported by the evidentiary record, the Conclusions of Law are consistent with the Findings of Fact and the Conclusions of Law are not erroneous as a matter of law.

Therefore, the Commission's Final Agency Decision is affirmed.

Based upon the foregoing determination by the Court, it is hereby ORDERED that the Petition for Judicial Review is denied and the matter is remanded to the State Personnel Commission for such further proceedings as are necessary to carry out the relief set out in Commission's Final Agency Decision.

The order does not specify the standard of review the court applied in making its decision. It refers to the Commission's findings of fact and conclusions of law and adopts them *in toto*, but does not restate them in its order. Reviewing solely the trial court's order, we cannot determine whether it properly reviewed the Commission's final decision.

In accordance with *Carroll*, and after review of the record and transcripts, we find them sufficient to consider the issue without remanding the case to the trial court to further address the standard

of review, findings of fact, and conclusions of law. 358 N.C. at 665, 599 S.E.2d at 898.

## B.  Review of Administrative Decisions

**[3]** Our Supreme Court has held that upon "judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review." *Carroll,* 358 N.C. at 658, 599 S.E.2d at 894 (citations omitted). N.C. Gen. Stat. § 150B-51(b) (2003) states:

> [I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1)  In violation of constitutional provisions;
>
> (2)  In excess of the statutory authority or jurisdiction of the agency;
>
> (3)  Made upon unlawful procedure;
>
> (4)  Affected by other error of law;
>
> (5)  Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6)  Arbitrary, capricious, or an abuse of discretion.

This standard of review applies to judicial review of an agency's decision, whether at the superior or the appellate court level. *See Rector v. N.C. Sheriffs' Educ. and Training Standards Comm.,* 103 N.C. App. 527, 532, 406 S.E.2d 613, 616-17 (1991) (superior court review); *see also Crist v. City of Jacksonville,* 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998) (appellate court review) (citing *Shoney's v. Bd. of Adjustment for City of Asheville,* 119 N.C. App. 420, 421, 458 S.E.2d 510, 511 (1995)).

## 1.  Law-Based Inquiries

Subparts (1) through (4) of N.C. Gen. Stat. § 150B-51(b) are characterized as "law-based" inquiries. *Carroll,* 358 N.C. at 659, 599 S.E.2d at 894 (citation omitted). Reviewing courts consider such questions

of law under a *de novo* standard. *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000). *De novo* review requires the court to consider " 'the matter anew[] and freely substitute[] its own judgment for the agency's.' " *Mann Media, Inc. v. Randolph Cty Planning Bd.*, 356 N.C. 1, 13-14, 565 S.E.2d 9, 17 (2002) (quoting *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999)).

Here, the only "law-based" inquiry NCDOR assigns error to is whether the Commission had jurisdiction over Vanderburg, a probationary employee, to consider his complaints. Having determined jurisdiction exists in this case, we now consider the NCDOR's argument that the Commission's findings of fact were not supported by substantial evidence.

## 2. Fact-Based Inquiries

N.C. Gen. Stat. § 150B-51(b)(5) and (b)(6) are "fact-based" inquiries. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894 (citation omitted). Fact-intensive issues " 'such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test.' " *Id.* (quoting *In re Greens of Pine Glen Ltd. Part.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). This standard of review requires the reviewing court to analyze all the evidence provided in the record "to determine whether there is substantial evidence to justify the agency's decision." *Carroll*, 358 N.C. at 660, 599 S.E.2d at 895. Substantial evidence is "relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C. Gen. Stat. § 150B-2(8b) (2003). A reviewing court "may not substitute its judgment for the agency's," even if a different conclusion may result under a whole record review. *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004).

### a. Religious Discrimination

In *Gibson*, our Supreme Court adopted the standard used by the United States Supreme Court in proving discrimination. 308 N.C. at 137, 301 S.E.2d at 82 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668 (1973)).

(1) The claimant carries the initial burden of establishing a *prima facie* case of discrimination; (2) The burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the applicant's rejection; and (3) If a legitimate nondiscriminatory reason for rejection has been articulated, the claimant has

the opportunity to show that the stated reason for rejection was, in fact, a pretext for discrimination.

*Gibson*, 308 N.C. at 137, 301 S.E.2d at 82 (emphasis supplied). This rule has been extended to cases in which an employee has been discharged. *Id.* (citing *McDonald v. Santa Fe Trial Transp. Co.*, 427 U.S. 273, 49 L. Ed. 2d 493 (1976)).

### i. *Prima Facie* Discrimination

Our Supreme Court noted in *Gibson* that a *prima facie* case of discrimination "may be established in various ways." 308 N.C. at 137, 301 S.E.2d at 82-83 (citing as examples of proving a *prima facie* case: *Coleman v. Braniff Airways, Inc.*, 664 F.2d 1282 (5th Cir. 1982) ((1) a claimant is a member of a minority group, (2) he was qualified for the position, (3) he was discharged, and (4) the employer replaced him with a person who was not a member of a minority group); *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977) (the discharge of a black employee and the retention of a white employee under apparently similar circumstances); *McDonald*, 427 U.S. at 273, 49 L. Ed. 2d at 493 (white employees discharged while black employees retained under similar circumstances)).

This Court addressed this issue in considering age discrimination in *Area Mental Health Authority v. Speed*, 69 N.C. App. 247, 317 S.E.2d 22, *cert. denied*, 312 N.C. 81, 321 S.E.2d 893 (1984). We determined that an individual " 'need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him.' " *Id.* at 253, 317 S.E.2d at 26 (quoting *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir. 1977)).

Vanderburg offered substantial evidence showing his dismissal was not based on his alleged unacceptable job performance. He received positive evaluations in May 1999 and June 2000 from all his supervisors in Charlotte and Gastonia. Pappas admitted that Vanderburg did "real good work" and worked "very hard" during a discussion with Vanderburg's father. Vanderburg substantially reduced the unexplained increased caseload he received that was not equalized in Fall 1999. McAteer and Williams, his superiors in Gastonia, were pleased with his "hard work" in both the personal income tax and business tax departments. When informed by McLamb that Vanderburg would be dismissed, both McAteer and Williams defended Vanderburg's performance. McLamb did not reevaluate his

decision despite admitting that he did not consider Vanderburg's reduction of the considerable backlog of business tax cases for that territory. In fact, Williams explained to Vanderburg that after meeting McLamb, it appeared that several people in more senior positions at the NCDOR "did not want him there." McLamb acknowledged that: (1) Foster had input into the termination decision; (2) he knew of the letters to Sanders; (3) Pappas had a problem with Vanderburg; and (4) he was aware of the 6 November 2000 petition.

This evidence was sufficient to show a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 215 (1981) (the burden of establishing a *prima facie* case of discrimination is not onerous); *Area Mental Health*, 69 N.C. App. at 253, 317 S.E.2d at 26 (such evidence supports the idea that the employee was qualified for the job and the dismissal resulted from "discriminatory motives"). We hold Vanderburg established, through substantial evidence, a *prima facie* case of discrimination based on his religious practices.

### ii. Shift of Burden to Employer

Vanderburg's showing of a *prima facie* case of discrimination does not equate to an actual finding of discrimination. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 579-80, 57 L. Ed. 2d 957, 969 (1978). Rather, a court may presume a discriminatory intent existed because in the absence of an explanation, it is more likely than not that the employer's actions were based upon discriminatory considerations. *Id.*; *Burdine, supra.* To rebut this presumption, the employer may show legitimate nondiscriminatory reasons for the dismissal. *Area Mental Health*, 69 N.C. App. at 254, 317 S.E.2d at 27 (citing *Gibson*, 308 N.C. at 138, 301 S.E.2d at 83). " 'The employer is not required to prove that its action was actually motivated by the proffered reasons for it is sufficient if the evidence raises a genuine issue of fact as to whether the claimant is a victim of intentional discrimination.' " *Area Mental Health*, 69 N.C. App. at 254, 317 S.E.2d at 27 (citing *Gibson*, 308 N.C. at 138, 301 S.E.2d at 83).

The NCDOR responded to Vanderburg's claim by arguing Vanderburg was dismissed for "unsatisfactory job performance in the form of insufficient productivity." It asserted: (1) Vanderburg created conflict with his supervisors; (2) he did not perform his share of the workload; (3) his caseload was disorganized and many files were missing; and (4) his overall performance was deficient.

The NCDOR's response to Vanderburg's *prima facie* case of discrimination raises a genuine issue of material fact concerning the reasons why Vanderburg was dismissed. *See Area Mental Health*, 69 N.C. App. at 253, 317 S.E.2d at 26 (citing *Gibson*, 308 N.C. at 138, 301 S.E.2d at 83). We hold the NCDOR articulated legitimate, nondiscriminatory reasons for Vanderburg's dismissal, shifting the burden of proof back to Vanderburg. *See Gibson*, 308 N.C. at 137, 301 S.E.2d at 82.

### iii.  Pretext for Discrimination

Following the employer's rebuttal of the *prima facie* case of discrimination, the employee receives an opportunity to show that the employer's stated reasons are merely a pretext for intentional discrimination. *Id.* at 139, 301 S.E.2d at 84. The plaintiff may rely on evidence presented to show the *prima facie* case to show a pretextual dismissal. *Id.*

The Commission made factual findings that Vanderburg's termination resulted directly from the conflict derived from his religious practices. In addition to the evidence showing Vanderburg was adequately performing his employment duties, Vanderburg offered additional evidence to support his claims: (1) the conflicts arose after Vanderburg requested and received permission to pursue secondary employment as an associate pastor; (2) Barnes and Pappas ordered the removal of religious items from Vanderburg's cubicle, while allowing several co-workers to continue to display similar religious objects; (3) Pappas indicated to Vanderburg's father that a probationary employee could be fired "for any reason;" (4) Vanderburg's caseload increased substantially without explanation and was not equalized after the meetings with Pappas and Barnes; and (5) Vanderburg was told on several occasions from various supervisors that he did not have a future with the NCDOR.

The record on appeal and transcript contain substantial evidence to support the Commission's factual findings that Vanderburg was dismissed under discriminatory motives. Although the NCDOR presented evidence to suggest Vanderburg had a history of unsatisfactory work as the basis of his dismissal, the ALJ found NCDOR's evidence "not worthy of belief." A whole record review does not permit us to substitute our judgment for the Commission's findings of fact. *Savings & Loan Assoc. v. Savings & Loan Comm.*, 43 N.C. App. 493, 259 S.E.2d 373 (1979). Vanderburg offered and the Commission found substantial evidence to show the NCDOR's prof-

fered reasons for his dismissal were a pretext for religious discrimination. *Gibson*, 308 N.C. at 137, 301 S.E.2d at 82. This assignment of error is overruled.

### V. Conclusion

N.C. Gen. Stat. §§ 126-36(a) and 126-39 provide the Commission jurisdiction over employment discrimination claims by non-career and former State employees. Vanderburg satisfied the burden of proof required in discrimination actions to show his dismissal was based on illegitimate and discriminatory motives. Although the trial court did not specify the standard of review it applied, detail its findings of fact, or delineate its conclusions of law, our review of the whole record and transcripts show no grounds exist to warrant reversal of the Commission's final decision. The trial court's order affirming the Commission's Final Decision is affirmed.

Affirmed.

Judge McGEE concurs.

Judge WYNN concurs by separate opinion.

WYNN, Judge concurring.

Although I agree with the majority's resolution of this matter, I separately concur in affirming the State Personnel Commission's decision for the reason that N.C. Gen. Stat. § 126-36 affords all state employees an appeals process if the employee suffered discrimination on the basis of race, religion, color, national origin, age, sex, or handicap.

In *Woodburn v. N.C. State Univ.*, 156 N.C. App. 549, 577 S.E.2d 154 (2003), this Court stated that Chapter 126 of the North Carolina General Statutes does not apply to probationary employees. Since that conclusion went beyond the issue in that case, I agree with the majority that this conclusion was dicta. Indeed, in the face of compelling and clear legislative language, and a prior North Carolina Supreme Court case, *N.C. Dep't of Corr. v. Gibson*, 308 N.C. 131, 301 S.E.2d 78 (1983), a prior opinion of this Court may not contravene the precedential value of a constitutionally allowed legislative mandate.

Moreover, I must emphasize that the issue on appeal concerns a matter of discrimination based on religious practices not of constitu-

tionally protected religious freedoms. The petition filed claimed unlawful discrimination pursuant to N.C. Gen. Stat. § 126-36. N.C. Gen. Stat. § 126-36 allows the State Personnel Commission to review state employee claims derived from alleged racial, religious, age, sex, national origin, or handicap discrimination. While constitutional issues may be applicable here, none are before this Court today.

Finally, I note that our Supreme Court has previously set out the standard for establishing discrimination pursuant to N.C. Gen. Stat. § 126-36. *Gibson,* 308 N.C. at 136-37, 301 S.E.2d at 82 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973)); *see Skinner v. N.C. Dep't of Corr.,* 154 N.C. App. 270, 278, 572 S.E.2d 184, 190 (2002). In *Gibson,* our Supreme Court also set out a four-step test to establish a *prima facie* case of discrimination. 308 N.C. at 137, 301 S.E.2d at 82-83. As N.C. Gen. Stat. § 126-36 applies to all forms of discrimination, this standard is applicable here. Upon applying this standard to the issue in this case, I reach the same result as the majority in affirming the State Personnel Commission decision.