NORTH CAROLINA FORESTRY ASSOCIATION, PETITIONER v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, DIVISION OF WATER QUALITY, AND THE NORTH CAROLINA ENVIRONMENTAL MANAGEMENT COMMISSION AND ITS NPDES COMMITTEE, RESPONDENTS, AND THE SIERRA CLUB AND DOGWOOD ALLIANCE

No. COA01-1329-2

(Filed 3 February 2004)

**1. Administrative Law— final agency decision—timeliness**

Petitioner waived its argument concerning the timeliness of a final agency decision (and whether the ALJ decision was therefore adopted) by failing to object even though it was notified of and participated in an agency hearing held after the time for issuing the final decision had run.

**2. Environmental Law— stormwater permit—NPDES Committee—final agency decision**

The National Pollutant Discharge Elimination System Committee of the Environmental Management Commission was properly delegated the authority to render a final agency decision under N.C.G.S. § 143-215.3(a)(4).

**3. Administrative Law— standard of review—not clearly delineated**

The superior court order upon review of a final agency decision was remanded where the Court of Appeals could not determine whether the superior court applied the appropriate standard to each issue.

Appeal by petitioner and respondents from order entered 27 March 2001 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 15 August 2002. A divided panel of this Court reversed for lack of standing by opinion filed 12 November 2002. See *N.C. Forestry Ass'n v. N.C. Dep't. of Env't. and Natural Res.*, 154 N.C. App. 18, 571 S.E.2d 602 (2002). The North Carolina Supreme Court reversed this Court and, by opinion filed 5 December 2003, remanded to this Court for consideration of petitioner's remaining assignments of error. See *N.C. Forestry Ass'n v. N.C. Dep't. of Env't. and Natural Res.*, 357 N.C. 640, 588 S.E.2d 880 (2003).

*Hunton & Williams, by Charles D. Case, Craig A. Bromby, Jeff F. Cherry, and Julie Beddingfield, for petitioner-appellant.*

*Attorney General Roy Cooper, by Special Deputy General Jill B. Hickey, for respondent-appellees.*

*Southern Environmental Law Center, by Donnell Van Noppen, III and Sierra Weaver for intervenors-appellees.*

TYSON, Judge.

## I. Facts

This Court originally heard this appeal and issued a majority opinion from a divided panel holding that plaintiff lacked standing. *N.C. Forestry Ass'n v. N.C. Dep't. of Env't. and Natural Res.*, 154 N.C. App. 18, 571 S.E.2d 602 (2002). The Supreme Court reversed that opinion and remanded this case to this Court for a ruling on the remaining issues. *N.C. Forestry Ass'n v. N.C. Dep't. of Env't. and Natural Res.*, 357 N.C. 640, 588 S.E.2d 880 (2003).

North Carolina Forestry Association ("petitioner") appeals the exclusion of wood chip mills from coverage under Stormwater General Permit No. NCG210000 issued by the North Carolina Department of Environment and Natural Resources, through its director of the Division of Water Quality ("respondent DENR").

Respondent DENR issued General Permit No. NCG210000 in April, 1998, which included some segments of the timber products industry, but excluded wood chip mills, logging, wood preserving, and cabinet-making segments of the industry. As part of this permit, respondent DENR allowed wood chip mills, which had applied for and obtained coverage under former General Permit No. NCG040000 before it expired, to remain covered under the expired permit. Only new or expanding wood chip mills were required to apply for "individual" permits.

On 1 June 1998, petitioner filed a Petition for Contested Case Hearing pursuant to N.C. Gen. Stat. § 150B-23 seeking administrative review of the decision. In an order filed 17 November 1998, the Administrative Law Judge ("ALJ") denied respondents' motion to dismiss petitioner's claims and allegations involving exclusion of wood chip mills from coverage under General Permit No. NCG210000. Both petitioner and respondents moved for summary judgment. The ALJ recommended that summary judgment be entered in favor of petitioner. The ALJ concluded that respondent DENR lacked statutory authority to consider secondary water quality impacts (sedimentation and erosion) of wood chip mills when it determined to exclude them from General Permit No. NCG210000.

On 13 October 1999, a hearing was held before the National Pollutant Discharge Elimination System Committee ("NPDES") of the Environmental Management Commission ("EMC") for a final agency decision. The EMC is a commission of respondent DENR. See N.C. Gen. Stat. § 143B-282 (2001). The EMC neither heard nor received new evidence after receiving the recommended decision from the ALJ. The EMC held that summary judgment should be granted in favor of respondents as petitioner lacked standing to bring its claims. In the alternative, the EMC ruled that respondent DENR "did not exceed its authority or jurisdiction, act erroneously, fail to act as required by law or rule, fail to use proper procedure, or act arbitrarily or capriciously in its decision to exclude wood chip mills from coverage under NPDES Stormwater General Permit No. NCG210000."

Petitioner sought judicial review of the EMC's final agency decision made by the EMC pursuant to N.C. Gen. Stat. § 143-215.5 and N.C. Gen. Stat. § 150B-43 et seq. Respondents filed motions to strike material that petitioner attached to its amended petition and brief in support of its argument for standing. Respondents argued that the additional material was not part of the record before the ALJ, not considered by EMC, and not appropriate for judicial notice.

Petitioner subsequently filed a motion to correct the record and a motion to present additional evidence with respect to petitioner's standing. The superior court entered an order on 27 March 2001, and did not consider nor rule upon respondents' motions to strike, petitioner's motion to correct the record, and petitioner's motion to present additional evidence.

The superior court found that the EMC timely rendered its final agency decision and that the ALJ's recommended decision did not become the final agency decision. The superior court also found petitioner to be a "person aggrieved" under N.C. Gen. Stat. § 150B-22, "based on the existing record," and reversed that portion of the final agency decision as "affected by error of law."

The superior court affirmed in part the final agency decision, concluding that the Director of the Division of Water Quality, acting under a delegation of authority from the EMC, has the "absolute power to issue or not to issue a general permit for any class of activities." The superior court did not reach nor rule upon the issues regarding the authority of EMC to consider secondary water quality impacts.

## II. Issues

The remaining issues to be addressed on remand to this Court are whether the superior court: (1) erred in concluding that the EMC's final agency decision was timely, (2) applied the correct standard of review in determining that respondent had "absolute power" under the statute, (3) applied the correct standards of statutory construction in determining respondent's statutory authority, (4) erred in failing to address whether respondent failed to act as required by law, (5) erred in failing to address whether respondent acted arbitrarily and capriciously and without substantial evidence in support of its decision to exclude wood chip mills from General Permit No. NCG210000, and (6) erred in failing to rule on motions to correct and supplement the record.

We affirm in part, vacate in part, and remand the order of the superior court for further proceedings.

## III. Final Agency Decision

### A. Timeliness

**[1]** Petitioner argues that the final agency decision of the EMC was not issued in a timely manner as required by N.C. Gen. Stat.

§ 150B-44 and that the NPDES Committee does not have statutory authority to render a final agency decision for the EMC. Petitioner contends that the recommended decision of the ALJ in favor of petitioner became the final agency decision. We disagree.

The statute as it then existed provided in pertinent part:

> An agency that is subject to Article 3 of this Chapter and is a board or commission has 90 days from the day it receives the official record in a contested case from the Office of Administrative Hearings or 90 days after its next regularly scheduled meeting, whichever is longer, to make a final decision in the case. This time limit may be extended by the parties or, for good cause shown, by the agency for an additional period of up to 90 days. If an agency subject to Article 3 of this Chapter has not made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's recommended decision as the agency's final decision. Failure of an agency subject to Article 3A of this Chapter to make a final decision within 180 days of the close of the contested case hearing is justification for a person whose rights, duties, or privileges are adversely affected by the delay to seek a court order compelling action by the agency or, if the case was heard by an administrative law judge, by the administrative law judge.

N.C. Gen. Stat. § 150B-44 (1999) (the General Assembly amended the time requirements effective 1 January 2001). In *Occaneechi Band of the Saponi Nation v. North Carolina Comm'n of Indian Affairs*, this Court interpreted the time limits of N.C. Gen. Stat. § 150B-44 to be self-executing. 145 N.C. App. 649, 551 S.E.2d 535, *disc. rev. denied,* 354 N.C. 365, 556 S.E.2d 575 (2001). The plain language of N.C. Gen. Stat. § 150B-44 provides that "an agency subject to Article 3 of this chapter has 90 days from the day the official record is received by the Commission or 90 days after its regularly scheduled meeting, whichever is longer, to issue its final decision in the case." *Id.* at 653, 551 S.E.2d at 538. The first ninety (90) days may be extended for an additional ninety days under two specific circumstances: "(1) by agreement of the parties and (2) for good cause shown." *Id.* (citing N.C. Gen. Stat. § 150B-44). We held that "the statute is clear that if a final decision has not been made within these time limits the agency is considered to have adopted the ALJ's recommended decision." *Id.* (citation omitted).

At bar, it is undisputed that the EMC received the recommended decision and official record from the Office of Administrative

Hearings on 4 May 1999, and that its next regularly scheduled meeting was 13 May 1999. Initially, EMC had to issue its final decision on or before 11 August 1999, under the first ninety day time limit. On 14 July 1999, EMC notified the parties in writing that the matter would be scheduled for hearing at either the 13 October or 14 October 1999, EMC meeting. No objection was made to this schedule.

Sometime after 11 August 1999, the chairman of EMC, by order entered *nunc pro tunc* to 10 August 1999, extended the time period for making a final agency decision for the additional ninety days. This order recited that the hearing of the matter was scheduled for a decision at the 14 October 1999, meeting for "good cause shown." The parties received the order on 27 August 1999. Petitioner did not object either to the hearing date or the order extending the time limit and participated in the hearing held on 13 October 1999, without objection. With the extension, EMC's deadline to issue its final decision became 9 November 1999. The final agency decision was issued on 5 November 1999.

Petitioner contends that an "after the fact extension" by an order *nunc pro tunc* is not provided for under N.C. Gen. Stat. § 150B-44. We do not address the issue of whether an agency may extend the time limits under N.C. Gen. Stat. § 150B-44 in this manner. Petitioner raised its timeliness argument for the first time on appeal in the superior court and has waived any objection to the extension.

> A litigant may not remain mute in an administrative hearing, await the outcome of the agency decision, and, if it is unfavorable, then attack it on the ground of asserted procedural defects not called to the agency's attention when, if in fact they were defects, they would have been correctible [sic].

*Nantz v. Employment Sec. Comm'n of N.C.*, 28 N.C. App. 626, 630, 222 S.E.2d 474, 477, *aff'd*, 290 N.C. 475, 226 S.E.2d 340 (1976) (citing *First-Citizens Bank and Trust Co. v. Camp*, 409 F.2d 1086 (4th Cir. 1969)). Petitioner waived the timeliness argument when it was notified of, participated in, and failed to object until after the EMC hearing. That portion of the superior court's order affirming the timeliness of EMC's final agency decision is affirmed.

## B. Delegation of Authority

[2] Petitioner further argues that the NPDES Committee does not have statutory authority to render a final agency decision for the EMC. Petitioner contends that N.C. Gen. Stat. § 150B-36(b) requires

that a final agency decision in a contested case be made by the agency, and that the NPDES Committee is not an "agency" as that term is defined in the statute. We disagree. *See* N.C. Gen. Stat. § 150B-2(1a) (2001) (Agency is defined as "an agency or an officer in the executive branch of the government of this State and includes the Council of State, the Governor's Office, a board, a commission, a department, a division, a council, and any other unit of government in the executive branch.").

The Congress of the United States authorized the Environmental Protection Agency ("EPA") to establish effluent limitations for pollutants and toxic waste discharges by industry, agricultural operations, and public and private waste treatment facilities. All public and private organizations that discharge wastes through point sources are required to obtain a NPDES permit. 33 U.S.C. § 1342 (1994). Individual states were authorized to assume responsibility for administration of the NPDES permit system upon enacting state statutory authorization and application to the EPA. 33 U.S.C. § 1342(b) (1994).

Our General Assembly amended the Water and Air Resources Act in order to obtain state administration of the NPDES permit system. 1973 N.C. Sess. Laws, c. 1262, s. 23. N.C. Gen. Stat. § 143-211(a) (2001) states the public policy underlying the Water and Air Resources Act is "to provide for the conservation of its water and air resources." The statute confers upon DENR authority "to administer a complete program of water and air conservation, pollution abatement and control . . ." and states that "the powers and duties of the [EMC] and the [DENR] be construed so as to enable the Department and Commission to qualify to administer federally mandated programs of environmental management . . . ." N.C. Gen. Stat. § 143-211(c) (2001).

N.C. Gen. Stat. § 143-215.3(a)(4) (2001) grants the EMC the power "[t]o delegate such of the powers of the [EMC] as the [EMC] deems necessary to one or more of its members, to the Secretary or any other qualified employee of the [DENR]." Pursuant to this statutory provision and federal regulations, EMC adopted Resolution 74-44 which appointed, a five member committee, in lieu of the full EMC, to hear appeals of decisions or orders of designated hearing officers regarding NPDES permits. Committee members are also required to comply with federal requirements for membership contained in 40 C.F.R. 123.25 (formerly 40 C.F.R. 124.94). As a result, the NPDES Committee, consisting of five members of the EMC, was properly

delegated the authority to render a final agency decision concerning petitioner's appeal.

Petitioner contends that EMC Resolution 74-44 is invalid. Petitioner argues the resolution preceded adoption of N.C. Admin. Code tit. 15A, r.2A.0007(a) creating the NPDES Committee and that the resolution has not been readopted by EMC or incorporated into the rule. The General Assembly specifically conferred upon EMC the statutory authority to delegate those powers it deemed necessary. *See* N.C. Gen. Stat. § 143-215.3 (2001). The statute as it existed in 1974 provided the same authority to delegate as the present statute. We see no need to require EMC to readopt or pass a new resolution absent a change in the statute that confers such authority. This assignment of error is overruled.

### IV. Standard of Review

**[3]** Petitioner argues that the superior court misinterpreted N.C. Gen. Stat. § 143-215.1 as granting respondent DENR "absolute power to issue or not to issue a general permit for any class of activities whatsoever." Petitioner asserts that the superior court failed to apply the proper standard of review of a final agency decision that petitioner contends was arbitrary and capricious. We agree.

Petitioner initially argues that *de novo* review applies to all issues but subsequently argues that respondents' final agency decision should be reviewed under an arbitrary and capricious standard. Judicial review of an administrative agency decision is governed by the North Carolina Administrative Procedure Act, codified at Chapter 150B of the North Carolina General Statutes. *Henderson v. North Carolina Dep't. of Human Resources*, 91 N.C. App. 527, 372 S.E.2d 887 (1988).

The superior court is authorized to reverse or modify an agency's final decision,

> if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2001). The proper standard of review by the superior court is determined by the particular issues presented on appeal. *ACT-UP Triangle v. Commission for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (quoting *Amanini v. North Carolina Dep't of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994)). If the petitioner contends the final agency decision is affected by an error of law, *de novo* review is the proper standard of review under N.C. Gen. Stat. § 150B-51(b)(1)-(4). *Dillingham v. North Carolina Dep't. of Human Resources*, 132 N.C. App. 704, 708, 513 S.E.2d 823, 826 (1999). If petitioner contends the final agency decision was not supported by substantial evidence under N.C. Gen. Stat. § 150B-51(b)(5), arbitrary and capricious, or an abuse of discretion under N.C. Gen. Stat. § 150B-51(b)(6), the whole record test is the proper standard of review. *Id.* The reviewing court may be required to utilize both standards of review if warranted by the nature of the issues raised on appeal. *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993).

These standards of review are distinct. *De novo* review requires the court to "consider a question anew, as if not considered or decided by the agency previously" and to "make its own findings of fact and conclusions of law" rather than relying upon those made by the agency. *Jordan v. Civil Serv. Bd. of Charlotte*, 137 N.C. App. 575, 577, 528 S.E.2d 927, 929 (2000) (citation omitted). On the other hand, "[t]he 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118. "Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion." *Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 503, 397 S.E.2d 350, 354 (1990), *disc. rev. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991) (citation omitted).

This Court's scope of appellate review of a superior court order regarding a final agency decision is limited to examination of the trial

court's order for error of law. *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118-19. "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* (citations omitted).

Petitioner asserts that the final agency decision exceeded statutory authority and was arbitrary and capricious. The superior court was required to employ both a *de novo* review for errors of law and a whole record review to determine whether the final agency decision was arbitrary and capricious. The order initially states that the court "considered the record, the briefs of all parties and the oral arguments of the parties." The order then states that it is based on the "existing record." Later, the order reverses conclusions of law denominated as numbers one and two of the final agency decision, stating that these conclusions "are affected by error of law." This later language implies the superior court conducted a *de novo* review. There are no findings of fact and no delineation by the superior court between when it applied a *de novo* or whole record review. This Court is unable to ascertain what standard of review was utilized and whether the superior court applied the appropriate standard of review to each allegation and conclusion of law. Judicial review under any standard is meaningless if, as the court found, an agency has "absolute power." Except as previously affirmed, the remaining portion of the superior court's order is vacated and remanded for delineation and application of the appropriate standard of review of petitioner's claims. *See Sun Suites Holdings, LLC v. Board of Aldermen of Garner*, 139 N.C. App. 269, 272, 533 S.E.2d 525, 527-28, *disc. rev. denied*, 353 N.C. 280, 546 S.E.2d 397 (2000) ("The trial court, when sitting as an appellate court to review a [decision of a quasi-judicial body], must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review.").

### V. Summary

The portion of the superior court's order regarding the timeliness of respondents' final agency decision and the delegation of authority to the NPDES Committee is affirmed. We vacate and remand the remainder of the order to the superior court to: (1) characterize the remaining issues before the court, (2) clearly delineate the standard of review used, (3) resolve each motion or issue raised by the parties, and (4) enter findings of fact and conclusions of law thereon consistent with this opinion.

HUNTER v. GUARDIAN LIFE INS. CO. OF AM.

[162 N.C. App. 477 (2004)]

Affirmed in part, vacated in part, and remanded.

Judges WYNN and MARTIN concur.