GWENDOLYN L. GORDON, Petitioner v. NORTH CAROLINA DEPARTMENT OF CORRECTION, Respondent

No. COA04-1494

(Filed 6 September 2005)

**1. Administrative Law— delay in entering decision—no showing of good cause**

The trial court did not err by reversing a State Personnel Commission order as untimely in violation of N.C.G.S. § 150B-44. Since the parties did not stipulate to an extension, the Commission must show that its delay in entering its decision was for good cause; the Commission's assertion that the delay resulted from an incomplete record was not persuasive.

**2. Appeal and Error— administrative law—assignment of error—standard of review**

The substantive nature of each assignment of error dictates the standard of judicial review of an administrative agency's final decision, whether in superior court or at the appellate level.

**3. Administrative Law— judicial review—de novo**

Subparts (1) through (4) of N.C.G.S. § 150B-51(b) are characterized as "law-based" inquiries, which are reviewed under a de novo standard.

**4. Employer and Employee— denial of promotion—prima facie case of racial and gender discrimination**

The four elements in *Dept. of Correction v. Gibson*, 308 N.C. 131, are not an exclusive determinant of a prima facie case of employment discrimination. A state employee made a sufficient showing of prima facie racial and gender discrimination by offering substantial evidence that the denial of her promotion was not based solely on the successful person being the better applicant.

**5. Administrative Law— standard of review—whole record**

Reviews under N.C.G.S. § 150B-51(b)(5) and (b)(6) are fact-based inquiries, to which the whole record test applies.

**6. Employer and Employee— discrimination—contradictions in testimony**

The administrative law judge and the trial court did not err by finding contradictions in the testimony of two witnesses in

GORDON v. N.C. DEP'T OF CORR.

[173 N.C. App. 22 (2005)]

an employment discrimination case against a state agency. Relevant evidence existed that a reasonable mind might accept as adequate to support the conclusion that the testimony was contradictory.

**7. Employer and Employee— discrimination—findings—sufficiency of evidence**

There was evidence in an employment discrimination case supporting the administrative law judge's findings about a state employee's experience, her accommodation of respondent in not taking a previous position, and the criticism of her by respondent's witnesses for not taking that position.

**8. Administrative Law— findings—intent and credibility—sufficiency of evidence**

The appellate court does not substitute its judgment for that of the ALJ, even if a different conclusion was possible. A finding by an administrative law judge about intent and credibility in an employment discrimination case was not overruled on appeal.

**9. Employer and Employee— discrimination—falsity of employer's explanation—inference permissible**

It is permissible for the trier of fact to infer the ultimate fact of employment discrimination from the falsity of the employer's explanation. The trial court here did not err by finding and concluding that the petitioner was more qualified than the successful applicant.

**10. Administrative Law— attorney fees and costs—pre-judicial and judicial**

The trial court did not err by awarding attorney fees and costs in an employment discrimination case against the State where it determined that the administrative law judge's award was not unreasonable or inadequate, and where it reversed the State Personnel Commission's decision against petitioner. Respondent had the opportunity to respond to the award because the trial judge mailed letters to both parties notifying them of the decision and directing affidavits about fees and costs two weeks before the order was drafted. N.C.G.S. § 126-41.

Appeal by respondent from order entered 2 June 2004 by Judge J. Richard Parker in Pitt County Superior Court. Heard in the Court of Appeals 8 June 2005.

GORDON v. N.C. DEP'T OF CORR.

[173 N.C. App. 22 (2005)]

*Ward and Davis, LLP, by John A. J. Ward and Susan P. Ellis, for petitioner-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Neil Dalton, for respondent-appellant.*

TYSON, Judge.

The North Carolina Department of Correction (the "DOC") appeals from order reversing the decision of the State Personnel Commission (the "Commission") and affirming the decision of the Administrative Law Judge (the "ALJ"). We affirm.

## I. Background

On 17 July 2001, the DOC posted a job opening for Superintendent IV for the Pamlico Correctional Institution. Petitioner Gwendolyn L. Gordon ("Gordon"), Robert Hines ("Hines"), and five other individuals applied for the position. The Eastern Region Director of the DOC, Joseph Lofton ("Lofton"), was the hiring manager for the position. Lofton and two other DOC employees conducted the interviews in July and August 2001. DOC Administrative Officers Wayne Harris and George Hedrick helped screen the applicants for those who were most qualified.

Both Gordon and Hines had attained twenty-plus years experience within the DOC. Some of Gordon's experience concentrated on the "program side," which involved primarily delivering medical, dental, diagnostic, psychological, religious, and work training materials to the inmates. Gordon also had extensive experience in supervising inmates, making inmate housing assignments, opening jails, expanding facilities, and developing labor contracts and community work assignments. Gordon is certified as a Basic Correctional Officer. She earned a four-year degree in business administration in the late 1970s. Gordon had been an assistant superintendent for five years and eight months.

Hines's experience involved more operations and custodial matters than programs. He worked in several "close custody" facilities in the past and served as an assistant superintendent for nine years and nine months. He earned a two-year associate degree plus a number of credit hours in business administration in the late 1970s.

On 9 August 2001, Lofton recommended Hines for the position and DOC Secretary Theodis Beck ("Secretary Beck") promoted Hines on 13 September 2001. Hines began work on 1 October 2001.

GORDON v. N.C. DEP'T OF CORR.

[173 N.C. App. 22 (2005)]

On 18 January 2002, Gordon filed a petition for a contested case hearing with the Office of Administrative Hearings (the "OAH") to contest the DOC's decision to promote Hines over her. Gordon alleged the DOC's decision was based on race and gender discrimination. Following a hearing, the ALJ determined the DOC discriminated against Gordon because of her race and gender and ordered she receive back pay and benefits from the date of Hines's promotion forward until she received a comparable promotion.

The ALJ's decision and record were sent to the Commission on 11 February 2003. The Commission issued a decision and order on 26 March 2003 reversing the ALJ's order. Gordon petitioned the trial court on 9 April 2003 for review of the Commission's order reversing the ALJ decision. After Gordon petitioned for judicial review and filed motions for sanctions against the DOC, the Commission withdrew its 26 March 2003 decision and order on 14 April 2003 on the grounds it did not have the complete record. The Commission failed to file a motion to extend the time to issue its decision and the parties did not stipulate to an extension. On 4 June 2003, the Commission issued a second order and decision reversing the ALJ. Gordon filed a second petition for judicial review by the trial court, re-filed her motion for sanctions against the DOC, and also moved the trial court for entry of the ALJ's order on the grounds that the Commission was late in filing its order.

The trial court conducted a hearing on Gordon's motions on 19 April 2004 and issued an order on 2 June 2004: (1) reversing the Commission's decision as untimely and based on the merits; (2) adopting the ALJ's findings of fact, conclusions of law, and final order; and (3) awarding Gordon damages, attorneys' fees, and costs. The DOC appeals.

## II. Issues

The issues on appeal are whether the trial court erred by: (1) determining the Commission's decision was null and void for its late entry; (2) determining Gordon established a *prima facie* case of race and gender discrimination; and (3) ordering the DOC to pay attorneys' fees and costs.

## III. Late Entry of Order

[1] The DOC argues the trial court erred in concluding the Commission's order, which reversed the ALJ's decision, was null and void due to its late entry. We disagree.

N.C. Gen. Stat. § 150B-44 (2003) provides in part:

> Unreasonable delay on the part of *any agency* or administrative law judge in taking any required action shall be justification for any person whose rights, duties, or privileges are adversely affected by such delay to seek a court order compelling action by the agency or administrative law judge . . . . An agency that is subject to Article 3 of this Chapter and is a board or commission has 60 days from the day it receives the official record in a contested case from the Office of Administrative Hearings or *60 days* after its next regularly scheduled meeting, whichever is longer, to make a final decision in the case. This time limit may be extended by the parties or, for good cause shown, by the agency for an additional period of up to 60 days. If an agency subject to Article 3 of this Chapter has not made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's decision as the agency's final decision.

(Emphasis supplied).

This Court considered this same issue in *Occaneechi Band of the Saponi Nation v. N.C. Comm'n of Indian Affairs*, 145 N.C. App. 649, 551 S.E.2d 535, *cert. denied*, 354 N.C. 365, 556 S.E.2d 575 (2001). We reversed the trial court's ruling that the time frame to make a decision under N.C. Gen. Stat. § 150B-44 is "intended to be presumptive, not absolute, and therefore, if an agency can demonstrate reasonableness in issuing a final decision beyond the statutory limit, the agency is not considered to have adopted the recommended decision of the ALJ." *Id.* at 652, 551 S.E.2d at 538. We held, "[t]he statute is clear that if a final decision has not been made within these time limits the agency is considered to have adopted the ALJ's recommended decision. We find no ambiguity in this statutory language that would give the trial court need to further explore legislative intent." *Id.* at 653, 551 S.E.2d at 538 (internal quotations omitted).

We recognized under N.C. Gen. Stat. § 150B-44 the initial time limit, here sixty days, could be extended: "(1) by agreement of the parties and (2) for good cause shown . . . . The statute is clear that if a final decision has not been made 'within these time limits' the agency is considered to have adopted the ALJ's recommended decision." *Id.* There, the Commission had . . . "[f]ound that the complexity of the case and the length of the Recommended Decision constitute good cause to extend the time . . . ." in entering its decision. *Id.* at 656, 551 S.E.2d at 540. However, we held the Commission "was without

authority to unilaterally extend the deadline for issuing its final deci-sion." *Id.* (citing *Holland Group v. N.C. Dept. of Administration*, 130 N.C. App. 721, 504 S.E.2d 300 (1998)).

In *Holland*, a contractor filed a contested case against the Department of Administration challenging the imposition of liqui-dated damages. 130 N.C. App. at 722-23, 504 S.E.2d at 302. The ALJ issued a recommended decision in the contractor's favor and trans-mitted the case to the Department of Administration for a final agency decision. *Id.* at 723, 504 S.E.2d at 302. The Department of Administration entered a notice that it received the "Official Record" in the case on 1 August 1995. *Id.* On 31 October 1995, the Department of Administration filed an "Extension of Time" to enter its decision due to the lack of tape recordings of the hearing in the record. *Id.* The tape recordings were received on 14 November 1995, completing the record. *Id.* Following a second extension, the Department of Administration entered its final decision on 13 May 1996. *Id.* at 724, 504 S.E.2d at 303. On judicial review, the trial court determined the final decision was untimely pursuant to N.C. Gen. Stat. § 150B-44 and adopted the ALJ's decision. *Id.*

On review by this Court, we held the "trial court did not err in concluding the Decision was not issued in a timely manner under G.S. § 150B-44." *Id.* at 728, 504 S.E.2d at 305. This holding was based on two primary factors. First, we noted, "[t]he plain language of G.S. § 150B-44 indicates the section is intended to guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay." *Id.* at 725, 504 S.E.2d at 304. Second, we consid-ered whether the Department of Administration was estopped from asserting the extensions were based on it not having the complete record. *Id.* at 726, 504 S.E.2d at 304. We recognized that in its notice, the Department of Administration acknowledged receipt of the "Official Record." *Id.* However, on appeal and before the trial court, the Department of Administration "sought to disavow this earlier rep-resentation and designate 14 November 1995 as the date it received the official record." *Id.* at 727, 504 S.E.2d at 304. We noted the Department of Administration could have easily determined the tape recordings were missing from the record. *Id.* However, the contractor "lacked the facility to ascertain whether or not the Department had indeed received the complete record . . . [and] accepted the Department's official assurance and anticipated a decision . . ." accordingly. *Id.* at 727, 504 S.E.2d at 304-05. "Given the precise lan-guage of G.S. § 150B-44 and the principles of equity, we [held] the

Department [was] estopped from denying it received the record on 1 August 1995." *Id.* at 727, 504 S.E.2d at 305.

Here, the ALJ's decision finding the DOC discriminated against Gordon was entered on 24 October 2002. On 11 February 2003, the Commission received the "Official Record" from the OAH. Included with the Official Record was a "Certification" by the OAH that the attached comprised the "Official Record." The certification also noted, "Video Tape Deposition of Joseph Lofton (4 video tapes) could not be duplicated for inclusion in the Official Record. They are on file in the Clerk's office and are available for review upon advanced notice." Kim Hausen, Chief Clerk of the OAH, provided a sworn affidavit stating in pertinent part, "no commission member contacted me at the Office of Administrative Hearings to view the tapes."

Despite not requesting the videotapes, the Commission issued its original decision and order on 26 March 2003 reversing the ALJ's order. On 8 April 2003, Gordon petitioned the trial court for judicial review of the Commission's decision. That same day, Gordon also filed a motion to reopen the record and for sanctions against the DOC for withholding discovery. On 14 April 2003, the Commission withdrew its 26 March 2003 decision and order claiming it did not receive the "whole" record from the OAH. Based on the withdrawal, Gordon filed an objection on 17 April 2003 to any further action by the Commission due to untimeliness under N.C. Gen. Stat. § 150B-44.

After receiving the "complete" record, the videotapes, on 16 April 2003, the Commission issued its second decision and order on 4 June 2003. Our review of both the Commission's original and second decisions and orders show they are virtually identical. Between withdrawal of the Commission's 26 March 2003 decision and order and passage of sixty days from 11 February 2003, the first date of receipt of the record, neither the Commission nor the parties filed a motion to extend the time for filing or stipulated to the extension. Based on this delay, Gordon filed a motion for entry of orders of the ALJ on 30 June 2003. Gordon also re-filed her motions to reopen the record and for sanctions against the DOC. Finally, Gordon petitioned the trial court for judicial review and entry of the ALJ's order. Following judicial review, the trial court reversed the Commission's decision and order and the ALJ's 24 October 2002 decision was deemed "adopted" by the Commission. The basis for the reversal was the late entry of the Commission's order.

Following *de novo* review of the issue, we hold the trial court did not err in reversing the Commission's decision as untimely in violation of N.C. Gen. Stat. § 150B-44. We note initially that Gordon properly preserved this issue for appellate review through her numerous objections to the Commission's delay. *See N.C. Forestry Ass'n v. N.C. Dep't of Env't & Natural Res.*, 162 N.C. App. 467, 472, 591 S.E.2d 549, 553 (2004) ("We do not address the issue of whether an agency may extend the time limits under N.C. Gen. Stat. § 150B-44 in this manner. Petitioner raised its timeliness argument for the first time on appeal in the superior court and has waived any objection to the extension."), *overruled on other grounds by N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 599 S.E.2d 888 (2004).

The mandatory sixty day time limit prescribed by N.C. Gen. Stat. § 150B-44 may only be extended: "(1) by agreement of the parties; [or] (2) for good cause shown [by the Commission]." *Occaneechi Band of the Saponi Nation*, 145 N.C. App. at 653, 551 S.E.2d at 538. The record indicates the parties did not stipulate to an extension. Thus, the Commission must show its delay in entering its decision and order was based on good cause.

The Commission asserts the delay resulted from receipt of an incomplete record transmitted by the OAH and such constitutes good cause. We are not persuaded. This Court has held the Commission is "without authority to unilaterally extend the deadline for issuing its final decision." *Id.* at 656, 551 S.E.2d at 540; *see Holland*, 130 N.C. App. at 728, 504 S.E.2d at 305. In addition, the doctrine of estoppel implemented in *Holland* is equally applicable here. 130 N.C. App. at 726, 504 S.E.2d at 304. The Commission's original decision and order dated 26 March 2003 began by stating, "The State Personnel Commission received the *official record* from the Office of Administrative Hearings on February 11, 2003." As in *Holland*, the Commission seeks to "disavow" this earlier representation and designate 16 April 2003 as the date it received the official record. 130 N.C. App. at 727, 504 S.E.2d at 304.

We further recognize the Commission was on notice of the four videotapes upon receipt of the official record on 11 February 2003. The OAH made the tapes readily available for the Commission's review. The Commission did not withdraw its original decision and order until *after* Gordon filed both a petition for judicial review and motions for sanctions against the DOC. No evidence shows the Commission filed its intent to extend the sixty day time limit as

required by the statute. Finally, the Commission's original and second decision and orders are virtually identical.

The trial court properly reversed the Commission's second decision and order dated 4 June 2003 as untimely under N.C. Gen. Stat. § 150B-44. Based on N.C. Gen. Stat. § 150B-44 and this Court's holdings in *Holland* and *Occaneechi Band of the Saponi Nation*, the Commission was without authority or good cause to extend the required sixty day time limit. This assignment of error is overruled.

## IV.  Race and Gender Discrimination

The DOC argues the trial court erred by finding as fact and concluding as a matter of law that it discriminated against Gordon based on her race and gender. We disagree.

### A.  Standard of Review

[2] Our Supreme Court has held that upon "judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review." *Carroll*, 358 N.C. at 658, 599 S.E.2d at 894 (citations omitted). N.C. Gen. Stat. § 150B-51(b) (2003) states:

[I]n reviewing a final decision, the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1)  In violation of constitutional provisions;

(2)  In excess of the statutory authority or jurisdiction of the agency;

(3)  Made upon unlawful procedure;

(4)  Affected by other error of law;

(5)  Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6)  Arbitrary, capricious, or an abuse of discretion.

This standard of review applies to judicial review of an agency's decision whether at the superior or the appellate court level. *See*

*Rector v. N.C. Sheriffs' Educ. and Training Standards Comm.*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616-17 (1991) (superior court review); *see also Crist v. City of Jacksonville*, 131 N.C. App. 404, 405, 507 S.E.2d 899, 900 (1998) (appellate court review) (citing *Shoney's v. Bd. of Adjustment for City of Asheville*, 119 N.C. App. 420, 421, 458 S.E.2d 510, 511 (1995)).

## 1. Law-Based Inquiries

**[3]** Subparts (1) through (4) of N.C. Gen. Stat. § 150B-51(b) are characterized as "law-based" inquiries. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894 (citation omitted). Reviewing courts consider such questions of law under a *de novo* standard. *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000). *De novo* review requires the court to consider " 'the matter anew[] and freely substitute[] its own judgment for the agency's.' " *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13-14, 565 S.E.2d 9, 17 (2002) (quoting *Sutton v. N.C. Dep't of Labor*, 132 N.C. App. 387, 389, 511 S.E.2d 340, 341 (1999)).

Here, the only two "law-based" inquiries presented by the DOC are whether the trial court properly concluded as a matter of law: (1) Gordon established a *prima facie* case of race and gender discrimination; and (2) Gordon was more qualified for the position than Hines. The DOC also contends this latter conclusion of law is based upon improperly found facts. We address these two arguments together.

## a. *Prima Facie* Case

**[4]** In *Dept. of Correction v. Gibson*, our Supreme Court adopted the standard used by the United States Supreme Court in proving discrimination. 308 N.C. 131, 137, 301 S.E.2d 79, 82 (1983) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668 (1973)).

(1) The claimant carries the initial burden of establishing a *prima facie* case of discrimination; (2) The burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the applicant's rejection; and (3) If a legitimate nondiscriminatory reason for rejection has been articulated, the claimant has the opportunity to show that the stated reason for rejection was, in fact, a pretext for discrimination.

*Id.* (emphasis supplied).

**GORDON v. N.C. DEP'T OF CORR.**

[173 N.C. App. 22 (2005)]

Our Supreme Court noted in *Gibson* that a *prima facie* case of discrimination "may be established in various ways." 308 N.C. at 137, 301 S.E.2d at 82-83 (citing as examples of proving a *prima facie* case: *Coleman v. Braniff Airways, Inc.*, 664 F.2d 1282, 1284 (5th Cir. 1982) (*prima facie* case established if: "(1) a claimant is a member of a minority group, (2) he was qualified for the position, (3) he was discharged, and (4) the employer replaced him with a person who was not a member of a minority group."); *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977) (the discharge of a black employee and the retention of a white employee under apparently similar circumstances), *overruled on other grounds by Burdine v. Texas Dept. of Community Affairs*, 647 F.2d 513 (5th Cir. 1981); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 49 L. Ed. 2d 493 (1976) (white employees discharged while black employees retained under similar circumstances)).

> The showing of a *prima facie* case is not equivalent to a finding of discrimination. Rather, it is proof of actions taken by the employer from which a court may infer discriminatory intent or design because experience has proven that in the absence of an explanation, it is more likely than not that the employer's actions were based upon discriminatory considerations.

*Gibson*, 308 N.C. at 138, 301 S.E.2d at 83 (citations omitted).

Gordon offered substantial evidence showing her denial of the promotion was not based solely on Hines allegedly being a better applicant. First, Gordon satisfied the optional four elements for gender discrimination: (1) as a female, she is a member of a protected group; (2) she was qualified for a promotion; (3) she was passed over for the promotion; and (4) the person receiving the promotion was not a member of the protected class. *See Enoch v. Alamance County*, 164 N.C. App. 233, 242, 595 S.E.2d 744, 752 (2004) (citations omitted). Further, evidence was proffered showing Gordon was more qualified than Hines by: (1) greater length of service and experience at the DOC; (2) more management training; (3) higher formal education; (4) higher classification and pay grade; (5) higher screening and test scores; (6) higher (TAPS) performance ratings; (7) more favorable supervisor recommendations; and (8) greater participation on task forces and specialty projects.

In addition, Gordon showed: (1) the DOC hired applicants in the past as superintendents with "program" experience; (2) the DOC committed procedural errors and irregularities in screening candi-

dates to Gordon's detriment; (3) Lofton signed off on performance appraisals of both Gordon and Hines where Hines was rated "very good" and Gordon "outstanding." Finally, Gordon offered into evidence an email from Secretary Beck to Lofton concerning Hines's hiring which stated,

> This is good. I am a little more comfortable in defending a Hines decision rather than a Washington decision in the event we are challenged by GG. Your 154 on Hines needs to give him all he is entitled to and I will take care of the rest if it becomes an issue . . . .

The DOC bases much of its argument on the contention that Gordon must satisfy the four elements enumerated in *Gibson* of a *prima facie* case. 308 N.C. at 137, 301 S.E.2d at 83 ("For example, a prima facie case of discrimination may be made out by showing that (1) a claimant is a member of a minority group, (2) he was qualified for the position, (3) he was discharged, and (4) the employer replaced him with a person who was not a member of a minority group."). However, as outlined in *Gibson* and above, this four-part analysis is not "onerous" or an exclusive determinant of a *prima facie* case of discrimination. *Id.* at 137, 301 S.E.2d at 82-83 (A *prima facie* case of discrimination "may be established in various ways.").

Gordon's proffered evidence was sufficient to show a *prima facie* case of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 215 (1981) (the burden of establishing a *prima facie* case of discrimination is not onerous); *Area Mental Health Authority v. Speed*, 69 N.C. App. 247, 253, 317 S.E.2d 22, 26 (such evidence tends to show the employee was qualified for the job and the dismissal resulted from "discriminatory motives"), *disc. rev. denied*, 312 N.C. 81, 321 S.E.2d 893 (1984). As the DOC assigned error only to the first prong of a discrimination claim, Gordon's *prima facie* case, our inquiry ends there. *See Gibson*, 308 N.C. at 137, 301 S.E.2d at 82 ("(1) The claimant carries the initial burden of establishing a *prima facie* case of discrimination; (2) The burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the applicant's rejection; and (3) If a legitimate nondiscriminatory reason for rejection has been articulated, the claimant has the opportunity to show that the stated reason for rejection was, in fact, a pretext for discrimination."); *see also Vanderburg v. N.C. Dept. of Revenue*, 168 N.C. App. 598, 609, 608 S.E.2d 831, 839-40 (2005). This portion of the DOC's assignment of error is overruled.

### 2. Fact-Based Inquiries

**[5]** Review under N.C. Gen. Stat. § 150B-51(b)(5) and (b)(6) are "fact-based" inquiries. *Carroll*, 358 N.C. at 659, 599 S.E.2d at 894 (citation omitted). Fact-intensive issues " 'such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test.' " *Id.* (quoting *In re Greens of Pine Glen Ltd. Part.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)). This standard of review requires the reviewing court to analyze all the evidence provided in the record "to determine whether there is substantial evidence to justify the agency's decision." *Carroll*, 358 N.C. at 660, 599 S.E.2d at 895. Substantial evidence is "relevant evidence a reasonable mind might accept as adequate to support a conclusion." N.C. Gen. Stat. § 150B-2(8b) (2003). A reviewing court "may not substitute its judgment for the agency's," even if a different conclusion may result under a whole record review. *Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004). Having affirmed the trial court's determination that the Commission adopted the ALJ's decision by delaying in issuing its own decision and order, we review the ALJ's findings of fact.

The "factual-based" inquiries presented by the DOC are whether the ALJ or trial court erred in finding as fact: (1) the content of Secretary Beck's email to Lofton; (2) conflicting testimony by Lofton and Hines regarding their past relationship; (3) the DOC's witnesses being "critical" of Gordon's prior work experience; and (4) Gordon was more qualified for the position than Hines.

### a. Conflicting Testimony

**[6]** The DOC argues substantial evidence does not support the ALJ's and trial court's finding of fact eleven, which states in pertinent part, "The testimonies of [Lofton] and [Hines] were contradictory, with [Lofton] asserting that he did not know [Hines] other than meeting him one time at Wayne and with [Hines] asserting that he had worked with [Lofton] in the past . . . ."

In response to questions about his relationship with Hines, Lofton testified in his deposition:

Lofton: It's rather difficult to say. I guess my actual recollection of professionally involvement with Mr. Hines, really, is when Ms. O'Konek had contacted me about some issues at Wayne Correctional Center, and I met with Mr. Hines and Ms. O'Konek at that point.

Question: You say professionally. Did you know him on an individual basis prior to that time?

Lofton: No. No, not really because, I mean, he lives in Goldsboro and I live in Goldsboro, but as far as interacting with each other, no.

Question: Are you a member of any social organizations that Mr. Hines is a member of?

Lofton: ACA. He's a—I think he's a—he's a member of the Minority Pioneers. I don't know whether he's a member of NABJA or not. I don't know whether he's a member of Southern Correctional Association. These are organizations that I belong to. I'm a fraternity member. He's not. As far as I know, he's not a member of the fraternity.

Hines testified that he met Lofton in 1978 when they worked together as correctional officers at Green Correctional Center, a small facility. Only ten to twelve officers worked at Green, in two to three officer shifts. Hines testified that he occasionally worked the same shift with Lofton. Hines also testified that he lived in the same town as Lofton and was a member of some of the same professional and social organizations as Lofton, like the North Carolina Correctional Association and Minority Pioneers. Hines testified both he and Lofton attended meetings and reunions for these clubs.

We hold the ALJ and the trial court did not err in finding contradictions in their testimony. Based on the inconsistencies in testimony by Lofton and Hines, relevant evidence existed that "a reasonable mind might accept as adequate to support [the] conclusion" that their versions were contradictory. N.C. Gen. Stat. § 150B-2(8b). We "may not substitute [our own] judgment for the [ALJ's and the trial court's]," even if a different conclusion may result under a whole record review. *Watkins*, 358 N.C. at 199, 593 S.E.2d at 769.

### b. Gordon's Work Experience

[7] Finding of fact twenty states in pertinent part:

[Gordon] at one time applied for the position of Assistant Superintendent for Custody and Operations at Craven Correctional Institution and was awarded the promotion. [The DOC] asked [Gordon] to accommodate it by giving up that posi-

tion and taking a position as Assistant Superintendent of Programs, which she did. Witnesses for [the DOC] in this hearing were critical of [Gordon] for not taking assignments in custody and operations and for not having geographic diversity in her work experience.

The DOC argues its witnesses' testimony "merely pointed out that [Gordon] could have received [custody and operations] experience if she chose and encouraged her to do so but she declined." However, the record shows the DOC argued Gordon's *lack* of experience was "the principle reason for promoting [Hines] over [Gordon]." In support of its decision, the DOC's witnesses would, and did, negatively comment on Gordon's past work experience at the DOC and minimized or was critical of it. Further, substantial evidence shows Gordon accepted an alternate position at Craven at DOC's request.

### c. Beck's Email

[8] Finally, DOC contends finding of fact twenty-one was not supported by substantial evidence. That finding states:

On September 12, 2001, Secretary Beck transmitted an email to Director Lofton stating: This is good. I am a little more comfortable in defending a Hines decision rather than a Washington decision in the event we are challenged by GG . . . . This email tends to show that Respondent intended to hire an African American male over a white female regardless of qualification.

The ALJ determined this email supported Gordon's claim of discrimination. Other evidence found as fact by the trial court and unchallenged by the DOC was "Oliver Washington, another candidate . . ., was not as qualified as either Robert Hines or [Gordon]." DOC asserts it never considered Washington for the position and the email was only a message by Secretary Beck to Lofton that "he was content with the choice." However, the ALJ and the trial court both found Secretary Beck's explanation for the contents of the email to be "unworthy of credence." *See Carroll*, 358 N.C. at 662, 599 S.E.2d at 896 ("there is but one fact-finding hearing of record when witness demeanor may be directly observed. Thus, the ALJ who conducts a contested case hearing possesses those institutional advantages, that make it appropriate for a reviewing court to defer to his findings of fact."). We are not permitted to substitute our own judgment for the ALJ, even if a different conclusion could result under a whole record review. *Watkins*, 358 N.C. at 199, 593 S.E.2d at 769.

**GORDON v. N.C. DEP'T OF CORR.**

[173 N.C. App. 22 (2005)]

### 3. Applicant Qualifications

**[9]** The ALJ and the trial court found as fact and concluded as a matter of law that Gordon was more qualified than Hines. The DOC asserts the ALJ and the trial court substituted their "business judgment" for that of the DOC to determine what criteria is relevant for the position. *See Gibson*, 308 N.C. at 140, 301 S.E.2d at 84 ("The trier of fact is not at liberty to review the soundness or reasonableness of an employer's business judgment when it considers whether alleged disparate treatment is a pretext for discrimination."). "The sole question is what is the motivation behind the employer's decision . . . . [I]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Enoch*, 164 N.C. App. at 242-43, 595 S.E.2d at 752 (internal citations and quotation marks omitted). However, "it is *permissible for* the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 147 L. Ed. 2d 105, 119 (2000).

> The factfinder's disbelief of the reasons put forward by defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination.

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 125 L. Ed. 2d 407, 418 (1993).

### a. Finding of Fact

Finding of fact twenty-three states:

It is found as a fact that both Robert Hines and Petitioner were highly qualified for promotion to position number 58000. As between the two candidates, Petitioner was more qualified in the following respects:

1. Petitioner has greater length of service, 27 years compared to 24 years,

2. Petitioner has more education, a 4 year degree compared to a 2 year associates degree,

3. Petitioner has achieved consistent ratings of outstanding on her performance appraisals compared to very good ratings for Robert Hines,

4. Petitioner has made significant contributions to the Department of Corrections and served on statewide task forces, and

5. Petitioner scored higher on both the interview for position 58000 and on the screening instrument.

Hines had more years experience in custody situations. However, our review of the transcripts and record shows substantial evidence exists to support the ALJ's and the trial court's findings that Gordon has met her burden to show that the DOC intentionally discriminated against her. Gordon presented evidence from which the finder of fact could conclude she was more qualified than Hines based on her education, seniority, overall record with the DOC, her "outstanding" grades on performance reports, and higher scores on the interviewing and screening tests. This portion of the assignment of error is overruled.

### b. Conclusion of Law

In *Dorsey v. UNC-Wilmington*, this Court addressed a claim of disparate treatment. 122 N.C. App. 58, 468 S.E.2d 557, *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996). We held:

once the complaining employee meets her initial burden of proving, by a preponderance of the evidence, a *prima facie* case of such "disparate treatment," the employer then has the burden of articulating some legitimate, nondiscriminatory reason for the employee's rejection. The employer's burden is satisfied if it simply produces evidence that it hired a better-qualified candidate. However, the employee can ultimately prevail in her claim of "disparate treatment" if she can prove that the employer's claim to have hired a better-qualified applicant is pretextual by showing that she was, in fact, better-qualified than the person chosen for the job.

*Id.* at 63, 468 S.E.2d at 560 (citing *N.C. Dept. of Correction v. Hodge*, 99 N.C. App. 602, 611-13, 394 S.E.2d 285, 290-91 (1990)).

Here, the advertised qualifications for Superintendent IV at Pamlico Correctional Institution were contained in the notice for applications:

Brief Job Description: This position will be responsible for the management and operation of all functions of institutional operations, including personnel, fiscal affairs, custody, security, main-

tenance, and inmate programs. Facility houses 529 inmates. Position manages approximately 200 employees. Position is responsible to formulate operational policy and interpret division policy applications. Extensive correctional experience and at least four years of management experience in prison operations is required.

Skills and abilities: Considerable knowledge of the management techniques and human resource development aspects of inmate custody and program management. Some knowledge of basic human psychology applicable to the inmate population. Considerable knowledge of departmental rules, policies, and procedures concerning the custody, care, treatment and training of inmates. Considerable knowledge of the principles of administration involved in operating a state correctional facility. Ability to provide leadership necessary to organize and supervise the activities of a large group of employees. Ability to establish and maintain effective relationship with inmates, inmates' relatives, professional and para-professional personnel, and volunteers. Ability to express ideas clearly and concisely, both orally and in writing. Ability to think clearly and act quickly and effectively during emergencies.

Education and Experience: Graduation from a four-year college or university and three years of supervisory, administrative, or consultative experience in correction or related work; or graduation from high school and five years of supervisory experience beyond the correctional officer level in correction or related work; or an equivalent combination of education and experience. Necessary special qualification: must be eligible for certification by the NC Justice Training and Standards Council.

Based on Gordon's qualifications set out above and found by both the ALJ and the trial court, substantial evidence exists showing Gordon was objectively better qualified for the position than Hines. We hold the ALJ and the trial court properly found as fact and concluded as a matter of law that Gordon was more qualified for the position than Hines to support her claim of race and gender discrimination.

## V. Attorneys' Fees

**[10]** The DOC contends the trial court erred in awarding attorneys' fees and costs to Gordon. We disagree.

Three statutes are applicable to this issue. N.C. Gen. Stat. § 126-4 (2003) provides:

Subject to the approval of the Governor, the State Personnel Commission shall establish policies and rules governing each of the following:

. . . .

(11) In cases where the Commission finds discrimination, harassment, or orders reinstatement or back pay whether (i) heard by the Commission or (ii) appealed for limited review after settlement or (iii) resolved at the agency level, the assessment of reasonable attorneys' fees and witnesses' fees against the State agency involved.

N.C. Gen. Stat. § 126-41 (2003) states:

The decision of the Commission assessing or refusing to assess reasonable witness fees or a reasonable attorney's fee as provided in G.S. 126-4(11) is a final agency decision appealable under Article 4 of Chapter 150B of the General Statutes. The reviewing court may reverse or modify the decision of the Commission if the decision is unreasonable or the award is inadequate. The reviewing court shall award court costs and a reasonable attorney's fee for representation in connection with the appeal to an employee who obtains a reversal or modification of the Commission's decision in an appeal under this section.

N.C. Gen. Stat. § 6-19.1 (2003) provides in part:

In any civil action, other than an adjudication for the purpose of establishing or fixing a rate, or a disciplinary action by a licensing board, brought by the State or brought by a party who is contesting State action pursuant to G.S. 150B-43 or any other appropriate provisions of law, unless the prevailing party is the State, the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees, including attorney's fees applicable to the administrative review portion of the case, in contested cases arising under Article 3 of Chapter 150B, to be taxed as court costs against the appropriate agency if:

(1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and

(2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust. The party shall

petition for the attorney's fees within 30 days following final disposition of the case. The petition shall be supported by an affidavit setting forth the basis for the request.

This Court considered each of the above statutes in addressing an award of attorney's fees and costs in *Morgan v. N.C. Dept. of Transportation*, 124 N.C. App. 180, 476 S.E.2d 431 (1996). We held review of attorney's fees under N.C. Gen. Stat. § 126-41 was limited to those fees accrued *prior* to judicial review. *Id.* at 183, 476 S.E.2d at 433 (N.C. Gen. Stat. § 6-19.1 does not apply to "services rendered prior to judicial review."). The trial court must review the Commission's decree of attorney's fees under N.C. Gen. Stat. § 126-41. *Id.* at 184, 476 S.E.2d at 433.

### A. Pre-Judicial Review

Here, the ALJ made extensive findings concerning attorneys' fees and costs during its review. Following its consideration of the matter, it substantially reduced the number of hours requested by Gordon to be paid from 315.85 to 233.35 hours. The trial court reviewed the ALJ's award and reviewed affidavits from counsel in support of and in opposition to Gordon's motion for attorneys' fees. In addition to those fees accrued prior to judicial review, the trial court awarded additional attorneys' fees for representation subsequent to the ALJ's decision.

Based on our review of both the ALJ's thorough consideration and decision concerning attorneys' fees and costs prior to judicial review and the trial court's subsequent adoption, we hold the trial court did not err in determining the ALJ's award was not "unreasonable" or "inadequate."

### B. Judicial Review

After reversing the Commission's decision, the trial court was required to award Gordon attorneys' fees and costs. *See* N.C. Gen. Stat. § 126-41 ("The reviewing court *shall* award court costs and a reasonable attorney's fee for representation in connection with the appeal to an employee who obtains a reversal or modification of the Commission's decision in an appeal under this section." (emphasis supplied)). The trial court properly awarded attorneys' fees and costs under N.C. Gen. Stat. § 126-41. Thus, we need not consider the application of N.C. Gen. Stat. § 6-19.1.

### C. Opportunity to Respond

The DOC also asserts it had no opportunity to respond to the award of attorneys' fees to Gordon. Gordon correctly notes and the record shows that on 28 April 2004, Judge J. Richard Parker sent letters to both parties notifying them of his intention to reverse the Commission's decision and adopt the decision of the ALJ. Included in the letter is the following provision: "Prior to drafting an order reflecting my decision, I direct Ms. Bryant to submit an affidavit regarding attorney's fees and costs of Petitioner as directed by the Administrative Law Judge in his decision. If the Respondent so elects an affidavit may be filed in opposition to attorney's fees." The DOC's counsel responded on 10 May 2004, asserting, "I will be responding to Ms. Bryant's affidavit within one (1) week." On 12 May 2004, Judge Parker sent both parties a letter affirming the ALJ's award of attorneys' fees and costs and ordering additional attorneys' fees and costs.

We are not persuaded that the DOC did not have an opportunity to respond. Two weeks passed between Judge Parker mailing the first letter and drafting the order for additional attorneys' fees. We hold the trial court provided sufficient notice and time for both parties to respond to its request for affidavits in support of or in opposition to attorneys' fees and costs. This assignment of error is overruled.

### VI. Conclusion

The trial court properly reversed the Commission's decision due to delay in entry of its decision and, as a result, adopted the ALJ's recommended decision. N.C. Gen. Stat. § 150B-44. Substantial evidence supported the ALJ's and the trial court's findings of fact. Our *de novo* review of the conclusions of law shows Gordon proffered evidence to prove a *prima facie* case of discrimination. The ALJ and trial court properly awarded Gordon attorneys' fees and costs for representation before the ALJ, the Commission, and the trial court. The trial court's adoption of the ALJ's decision and its subsequent order is affirmed.

Affirmed.

Judges McCULLOUGH and BRYANT concur.